### A01A2419. BAILEY v. THE STATE.
(562 SE2d 803)

BLACKBURN, Chief Judge.

James Edward Bailey was tried by a jury and found guilty on two counts of aggravated assault. He appeals, contending that there was insufficient evidence to convict him and that his counsel should have been allowed access to documents with which a witness for the State refreshed her memory. We affirm.

1. Bailey argues that there was insufficient evidence for the jury to find him guilty of either of the counts of aggravated assault, placing particular emphasis on the fact that his conviction was based on the testimony of Simone Kellacher, one of the victims, who has since recanted her testimony.

The issue when reviewing a conviction for sufficiency of the evidence is whether, based on the evidence presented, a rational finder of fact could have found the accused guilty of

the charged offenses beyond a reasonable doubt. Leaving the resolution of conflicting or contradictory testimony and the credibility of the witnesses to the jury, we construe the evidence in favor of the jury's verdicts. In this regard, even though a witness may recant on the stand, [her] prior inconsistent statements constitute substantive evidence on which the jury may rely.

(Footnotes omitted.) *Gunsby v. State*.[1]

Viewed in this light, the evidence shows that on the evening of May 3, 1996, Bailey and Kellacher attended a cook-out at the home of Scott White and Robin Howard. Bailey and Kellacher each drove to the cook-out from the home of Kellacher's mother. Bailey drove his light blue Ford pickup truck, and Kellacher and her ten-month-old daughter, Savannah Bailey, rode in her Pontiac Grand Am. Sometime between 10:00 and 11:00 p.m., Bailey, White, and another man left White's trailer. They spent most of the night drinking beer and did not return until approximately 6:30 a.m., bringing White's mother-in-law and sister with them.

Upon their return, Kellacher, upset and angry with Bailey, went outside to confront him. She found him in the back of White's car with White's sister. After a heated argument, Kellacher put Savannah into the car and left, driving toward Alma on Highway 32. Bailey followed her and, at some point, caught up with her and rammed her car on the driver's side. Kellacher came to a stop on the side of the road. Unable to get into the car, Bailey took a shovel from his truck and began beating on the windshield of Kellacher's car, finally knocking a hole in the windshield on the passenger side where Savannah lay in her car seat. After the windshield broke, Kellacher got the car started and drove away. She stopped at a convenience store and called 911. Her conversation with the 911 operator was recorded and played at trial for the jury. In that conversation, she told the operator that Bailey had rammed her car, forced her off the road, broken her windshield, and threatened to kill her before she could get back to Alma. She also said that she had removed the pieces of broken glass from her baby and that the baby appeared to be unharmed.

The first officer to respond to the 911 call was Officer Lance Pierce of the Glynn County Sheriff's Office. When he arrived on the scene, he found Kellacher sitting on the curb with Savannah. The door on the driver's side of her car had been rammed in, the windshield was broken, and there was glass on the front seat and in the infant car seat. Kellacher repeated to Pierce what she had told the 911 operator. She later took him to the site on Highway 32 where

[1] *Gunsby v. State*, 248 Ga. App. 18 (545 SE2d 56) (2001).

Bailey had forced her off the road. Also called to the scene was Detective Nanci Taylor, who spoke with Kellacher and photographed the car and its contents. These photographs show the damage to the side of the car, the shattered windshield, and the glass in the front passenger seat. A third Glynn County police officer who was called to the convenience store was Jim Kelly, leader of the major accident investigative team. Kelly, who was tendered and accepted without objection as an expert in the field of accident investigation and accident reconstruction, testified that the damage to the driver's side door was recent because flakes of the paint were still present and the exposed metal had not begun to oxidize. He also testified that there was light blue transfer paint on the side of Kellacher's vehicle, indicating that it had been struck by a light blue vehicle. He testified further that the damage to the windshield had been caused by a blunt instrument striking the windshield from the outside.

The evidence in this case was sufficient under the standard of *Jackson v. Virginia*[2] to authorize the jury's verdict beyond a reasonable doubt on both counts.

2. Bailey contends that the trial court erred in not allowing his trial counsel to examine the documents which were contained in a State's witness' case file. We disagree. Testimony revealed that the witness had been reviewing the file as she sat at counsel's table prior to testifying. She did not bring the file to the stand when called to testify.

Bailey's counsel informed the judge that he believed that he was entitled to see the documents contained in the case file, but stated no legal basis for such right. The State objected, telling the judge that "[u]nder the law he's entitled to review anything that she reviews after she takes the witness stand which is nothing." This is neither a complete nor accurate statement of the law. The defendant here, however, did not attempt to establish that the witness had reviewed the file for the purpose of refreshing her memory, a necessary element to defendant's right to review the file. The judge agreed with the State and sustained its objection.

Our Supreme Court has fixed the right to examine documents when used by witnesses for the purpose of refreshing their memories after the inception of the trial, even if they do not do so while actually testifying at the hearing or trial. *Johnson v. State*.[3]

In *Baxter* [*v. State*],[4] we held that a criminal defendant has the right, upon request, to examine documents used by witnesses to refresh their recollection. There has been some dif-

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Johnson v. State*, 259 Ga. 403, 405 (383 SE2d 118) (1989).

[4] *Baxter v. State*, 254 Ga. 538, 548 (331 SE2d 561) (1985).

ficulty in trying to decide where to draw the line between access and non-access. There is confusion about whether the line should be drawn according to where a particular witness is physically located (i.e., on the witness stand, in the courtroom, etc.) or at some specified time relative to the witness (i.e., at the time the witness is testifying, immediately before the witness testifies, etc.). To resolve this, we will fix the right to examine such documents at the commencement of hearing or trial. Accordingly, if a witness uses documents to refresh memory *after* the inception of a hearing or trial, then during that hearing or trial, the cross-examiner is entitled to examine such documents.

(Emphasis in original.) Id. *Johnson* makes it clear that the trial judge in this case did not err in its ruling as there was no showing that the witness had reviewed the case file for the purpose of refreshing her memory.

Even if the trial court had erred in its ruling, the error is harmless. Bailey had filed motions seeking discovery, and the discovery provided him included narrative portions of the police case file. Bailey's counsel referred to this narrative in his cross-examination of a State witness. Moreover, much of Detective Taylor's testimony concerned her conversation with Kellacher at the convenience store from which she had called 911 and the photographs which she had taken of Kellacher's car. Her testimony regarding Kellacher's previous statements was also part of the testimony presented through the 911 tape and the testimony of another police officer. Her testimony concerning the damage to Kellacher's car was consistent with the testimony of Officer Kelly, leader of the major accident investigative team. Bailey had the opportunity to, and did, cross-examine Taylor in a thorough fashion. Given the cumulative nature of Taylor's testimony and Bailey's opportunity to cross-examine her concerning all she told the jury, it is highly probable that the trial court's error, if any, did not contribute to the verdict and is, therefore, harmless. *Johnson*, supra.

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED MARCH 25, 2002.

*Patrick C. Kaufman*, for appellant.
*Stephen D. Kelley, District Attorney, Charles K. Higgins, Assistant District Attorney*, for appellee.