S02A0800. TURNER v. THE STATE.
S02A0931. CAREY v. THE STATE.
(566 SE2d 676)

HUNSTEIN, Justice.

Ashley Daniel Turner and Tony Eugene Carey were indicted on charges of malice murder, aggravated battery, aggravated assault, arson, possession of a firearm during the commission of a felony, and cruelty to animals arising out of the torture and shooting death of Ronnie Ford and the burning of a mobile home which led to the death of a dog. Carey additionally was charged with possession of a firearm by a convicted felon. The jury convicted the men of all charges. Turner appeals from the judgment of conviction and sentence entered thereon; Carey appeals from the denial of his motion for new trial.[1]

1. The jury was authorized to find that the victim, Ronnie Ford, told a witness who saw him in Turner's truck on the night of the crimes that Ford had persuaded Turner and Carey (who are cousins) to give him a ride to the mobile home where Ford was staying with the home's permanent resident, a reputed drug dealer known as "Ant Dog." Turner's girlfriend, Takesha Mitchell, testified that Turner told

---

[1] The crimes occurred on August 27, 2000. Turner and Carey were indicted November 9, 2000 in Floyd County. They were found guilty on all counts on July 13, 2001. Turner was sentenced that day to life for the murder, concurrent twenty year sentences on the aggravated battery, aggravated assault and arson convictions, concurrent twelve month sentence on the cruelty to animals conviction, and five years to run consecutively on the possession charge. Carey was also sentenced that day to life for the murder; on the remaining charges, although Carey received identical sentences in terms of duration with Turner, Carey's sentences were set to run consecutively to the life sentence. Based on the State's introduction into evidence of a certified copy of Carey's 1994 conviction for aggravated assault, Carey was convicted of possession of a firearm by a convicted felon and received a consecutive five year sentence on that charge. Turner filed his notice of appeal on August 10, 2001; his appeal was docketed February 12, 2002 and was submitted for decision on the briefs. Carey filed a motion for new trial on August 10, 2001. The motion was denied January 31, 2002 and the appeal, docketed in this Court on March 13, 2002, was submitted for decision on the briefs.

her that once the men arrived at the home, Turner and Carey demanded that Ford tell them where Ant Dog kept his drugs and money. The two men tortured Ford by burning him on the chest with a red-hot coat hanger heated on the stove until he revealed the information they sought. Before they left with the victim, Turner and Carey set the home on fire, and thereafter shot the victim to death. Mitchell told police that Turner stated to her that Turner "wanted real bad to let [the victim] live, but he knew that he had helped burnt down the trailer so he couldn't . . . let him live." Ford's body was found two hours after he was seen in Turner's truck.

Investigators testified that the mobile home fire was deliberately set and that they found the remains of the resident's dog, who was kept tied to the front porch. Medical testimony established that there were stripes of second to third degree burns on the victim's chest consistent with the manner of torture Turner had related to Mitchell and that the victim died as the result of 14 separate gunshot wounds inflicted by two different caliber weapons. One of the murder weapons was recovered by the police several days after the murder after Carey dropped it while fleeing from police officers who were trying to question the man. When Carey was subsequently apprehended, he was in possession of another weapon (not used in the murder) which matched shell casings found at the scene of the arson. The State introduced as an exhibit a pistol with the same caliber as the other murder weapon, which Takesha Mitchell identified as similar to a pistol Turner gave her as he, too, fled from police after they attempted to talk with him about the crimes.

When he turned himself in to police two days later, Turner gave a statement denying having been with the victim on the night of the crimes. At trial both Turner and Carey testified that they gave Ford a ride but only dropped him off at the trailer then drove away and returned to their homes.

We find this evidence sufficient to enable a rational trier of fact to find Turner and Carey guilty beyond a reasonable doubt of the charged crimes. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). In light of the evidence regarding the severity of the burn wounds inflicted on the victim and testimony regarding the presence of the dog tied under the porch, the trial court did not err by denying the motions for directed verdict made by both appellants regarding the aggravated battery and cruelty to animals charges. See generally *Battles v. State*, 273 Ga. 533 (2) (543 SE2d 724) (2001) (directed verdict appropriate only when all reasonable deductions and inferences arising from the undisputed evidence demand a finding that the accused is not guilty).

2. Carey contends the trial court erred by allowing the declarations Turner made to Mitchell, arguing that the State failed to prove

the existence of a conspiracy independent of Turner's declarations so as to make Turner's statements admissible against him. See *Freeman v. State*, 273 Ga. 137 (2) (a) (539 SE2d 127) (2000); see also OCGA § 24-3-5. The law is clear that an express agreement is not needed to establish a conspiracy. *Waldrip v. State*, 267 Ga. 739, 747 (10) (b) (482 SE2d 299) (1997). "The essence of conspiracy is a common design, and conduct which discloses a common design may give rise to an inference of conspiracy. [Cit.]" Id. Whether a conspiracy exists is a question for the jury to determine. *Freeman*, supra.

The jury was authorized to infer the existence of a conspiracy from the evidence adduced at trial that Carey and Turner drove the victim to the mobile home where he was staying; the victim's body was located a short distance from the burning home shortly thereafter; and the two men were together in the hours following the commission of the crimes. Carey had previously made statements indicating his desire to "get" Ant Dog, the resident of the mobile home. Two different weapons fired the shots that killed the victim; Carey was subsequently found in possession of one of those weapons. He also had a weapon that fired shells found at the scene of the arson. Carey gave a false name to police when approached and thereafter fled.

It is well established that presence, companionship and conduct before and after the offense are circumstances which may give rise to the existence of a conspiracy. *Hull v. State*, 265 Ga. 757 (12) (462 SE2d 596) (1995), overruled on other grounds, *Woods v. State*, 269 Ga. 60 (495 SE2d 282) (1998); see also *Simmons v. State*, 196 Ga. 395 (4) (26 SE2d 785) (1943). The evidence adduced was sufficient to establish the State's prima facie case that Carey and Turner were involved in a conspiracy without regard to the declarations of co-conspirator Turner. See *Freeman*, supra.

3. Both Turner and Carey challenge the trial court's decision, in response to a request by the jury, to allow the jury to rehear both Mitchell's trial testimony and an audiotaped statement Mitchell had given police during the course of the investigation.[2] The portions were replayed after the trial court thoroughly instructed the jury not to overemphasize the replayed testimony. Appellants, however, contend that the repeated admission of Mitchell's testimony worked an injustice in this case which was not cured by the trial court's instruction.

We disagree. Whether to allow the jury to rehear requested parts of the evidence is a matter within the discretion of the trial court.

---

[2] We reject Turner's argument that snippets of testimony the jury may have overheard during the process of rewinding the tape constituted a "replaying" of the testimony.

*Byrd v. State*, 237 Ga. 781 (1) (229 SE2d 631) (1976). "In order to demonstrate an abuse of the trial court's discretion, appellant must show that there are 'special circumstances' that would make it unjust to allow the jury to revisit the evidence. [Cit.]" *Watkins v. State*, 273 Ga. 307, 310 (3) (540 SE2d 199) (2001). Appellants have shown no such special circumstances. Based on our review of the transcript, including the curative instructions given by the trial court, we find no abuse of the trial court's discretion.

*Judgments affirmed. All the Justices concur.*

DECIDED JULY 15, 2002.

*Pierce Winningham III,* for appellant (case no. S02A0800).
*Teddy L. Henley,* for appellant (case no. S02A0931).
*Bryant G. Speed II, District Attorney, Kay A. Wetherington, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jennifer S. Gill, Assistant Attorney General,* for appellee.