A02A2466. JONES v. THE STATE.
(577 SE2d 878)

ADAMS, Judge.

Sharon Jones was tried by a jury and convicted of simple battery, aggravated battery, and false imprisonment. She appeals, raising four enumerations of error. For the following reasons, we affirm.

Evidence at trial was that 63-year-old Harry and Sharon Jones were married in February 1998. In June 1998, George Herring and

---

Lori Sewer, workers for the Marion County Department of Family and Children Services (DFACS), received a complaint that Mr. Jones was being abused by his wife. On June 24, 1998, they went to his residence to investigate. When they arrived at the property, they saw that it was surrounded by a fence with a locked gate. Herring and Sewer stayed in the car and blew the horn repeatedly for about 20 minutes before Mrs. Jones came out and talked to them. The DFACS employees asked to speak to Mr. Jones, and Mrs. Jones left again for about 15 minutes before returning to unlock the gate and allow them to enter the property.

As Herring and Sewer came onto the property, they noticed an operational security monitor which provided different views of the Joneses' land and residence. Herring and Sewer tried to talk with Mr. Jones alone, but Mrs. Jones resisted their efforts to investigate the situation by answering all of their questions and preventing them from speaking to him separately. The Joneses initially denied that Mr. Jones had been injured or burned, as the DFACS information had indicated. Nevertheless, at one point Mr. Jones raised his leg and Herring saw a burned area on it which appeared to be untreated.

In response to Herring's questions about the burn, the Joneses explained that several days earlier Mrs. Jones had thrown a pot of hot water on the floor which splashed up and burned her husband. Later in the conversation, Mrs. Jones gave various versions to Herring and Sewer of how Mr. Jones's injuries occurred — she claimed that the couple had fought and that she had been injured too, although her injuries were "internal."

As Herring and Sewer prepared to leave, Mr. Jones began to cry and asked for help. He stated, "it has to stop," and then he told Mrs. Jones that she had to stop hitting and burning him. The DFACS employee then asked Mr. Jones if he wanted help, and he stated that he did. Herring told the Joneses that he wanted to call for help; Mrs. Jones refused to let Herring use their telephone. Accordingly, Herring and Sewer left the residence and went to call the sheriff. They returned to the property with the sheriff and paramedics. Mrs. Jones did not come outside to let them on the property, but they got inside the gate nonetheless. As the paramedics put Mr. Jones into the ambulance, Herring heard Mrs. Jones remark that she "would kill [Mr. Jones] before she would let somebody else have him."

When the paramedics removed Mr. Jones's pants they saw many second and third degree burns on his feet and legs; the burns appeared to have been inflicted at different times. There were also burns on his hip and groin areas, and his ear was swollen. Jones also had a bruise on his forehead and another injury to the top of his head.

On the way to the hospital in the ambulance, Mr. Jones told the

paramedics that he needed help, that he had been thrown down, and that his wife then dumped hot water on him. Jones stated that the abuse had been occurring for months and that he wanted help in getting out of the situation. Jones reported that his cauliflower ear was the result of "an accident."

At the hospital, Jones talked to both Georgia Bureau of Investigation (GBI) Special Agent Jeff Watson and Herring about the abuse. Jones told Watson that his wife poured hot water on both of his feet and that some water hit his chin. He stated that one time Mrs. Jones got angry with him and sprayed him in the face with a cleaning disinfectant. He also told Watson that she had hit, kicked, and slapped him on numerous occasions and that she handcuffed him to the bed or to a chair so that he could not leave the residence. Mr. Jones stated that because he was scared of his wife, he had not reported the abuse. Mr. Jones later told Herring that if "[DFACS] hadn't gotten involved he probably wouldn't have made it." Watson photographed some of the burns and Jones's swollen ear; these photographs were admitted as evidence at trial.

Agent Watson testified at trial that Mr. Jones gave him consent to go to his home to gather some of his personal belongings. Accordingly, Watson went to the residence and discovered in the bedroom a pair of handcuffs connected to a bedpost, a knife on the end of the bed, a pistol and a disinfectant spray bottle on the nightstand, and a rifle. Watson discovered that the mattress had more than 25 stab marks in it; the knife at the end of the bed fit perfectly into these gashes. In the living room, Watson saw another set of handcuffs attached to an entertainment center. Watson testified that the Joneses' property was monitored by a high tech surveillance system which covered each angle of the property. There was also testimony that when Mrs. Jones was arrested she had in her possession keys to the handcuffs, two Delta airline tickets, and a total of $2,700 in cash and travelers' checks.

Before trial, on September 11, 1998, Mr. Jones filed an affidavit, swearing that he and Mrs. Jones were reconciled; that his wife did not commit the crimes with which she was charged; that his injuries were the result of an accident; and that he did not want to testify at trial and that he wanted to have the entire matter dismissed. He also stated that he had asked his wife to handcuff him while he slept to prevent him from hurting himself.

At trial, Mr. Jones's testimony was consistent with his affidavit. He recalled that his burns were caused accidentally when water which she was using to wash dishes splattered onto him. He conceded that he and his wife were arguing on the date that the DFACS workers came. He also testified that sometimes Mrs. Jones misunderstood him and slapped him more than once, though he explained

that the hitting did not hurt as badly as breaking a bone. Jones claimed that the statements he made regarding Mrs. Jones hitting him in the ear, intentionally pouring boiling water on him, and spraying cleaning disinfectant in his eyes were not true. Nonetheless, he stated that she had sprayed "some stuff" in his eyes. He testified that his wife handcuffed him to the bed at night to protect him from falling and that she had stabbed the bed two or three times with a knife because of her jealousy. Mr. Jones then stated that his mind "plays tricks" on him as a result of a bad car accident in 1988. At the conclusion of the trial, the court noted on the record that Mr. Jones was not completely in control of his faculties at trial.

1. In her first enumeration, Sharon Jones argues that the evidence was insufficient to convict her of aggravated battery. With respect to this charge, the indictment alleged that Sharon Jones maliciously injured Harry Jones by seriously disfiguring a member of his body, by pouring boiling water on his leg and foot. Jones claims that the State failed to prove that her husband's injuries were caused by unlawful and malicious conduct, rather than by an accident, and that the State failed to prove that she had caused "serious disfigurement," as the statute requires.

OCGA § 16-5-24 (a) provides: "[a] person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof."

> The issue when reviewing a conviction for sufficiency of the evidence is whether, based on the evidence presented, a rational finder of fact could have found the accused guilty of the charged offenses beyond a reasonable doubt. Leaving the resolution of conflicting or contradictory testimony and the credibility of the witnesses to the jury, we construe the evidence in favor of the jury's verdicts. In this regard, even though a witness may recant on the stand, [his] prior inconsistent statements constitute substantive evidence on which the jury may rely. (Footnotes omitted.) *Gunsby v. State*[, 248 Ga. App. 18 (545 SE2d 56) (2001)].

*Bailey v. State*, 254 Ga. App. 420-421 (1) (562 SE2d 803) (2002).

In this case, there was ample evidence that the injuries to Mr. Jones's foot and leg were the result of Sharon Jones's malicious and intentional conduct. Accordingly, we reject her argument that the evidence was insufficient in this respect.

Similarly, we reject Sharon Jones's argument that the wounds she inflicted on her husband were insufficient to constitute "serious

disfigurement" under the statute. In *Williams v. State*, 248 Ga. App. 316, 318-319 (1) (546 SE2d 74) (2001), this Court attempted to define the "seriously disfiguring" requirement of OCGA § 16-5-24 (a), stating: "although 'seriously disfiguring' is not defined in OCGA § 16-5-24, it must require an injury more severe than the visible wounds used to illustrate the 'visible bodily harm' required to support a battery conviction [under OCGA § 16-5-23.1]."

In setting forth this definition, the *Williams* court cited *McClain v. State*, 232 Ga. App. 282, 283 (1) (502 SE2d 266) (1998), in which gasoline burns which resulted in scarring met the requirement of "serious disfigurement" under the statute. In this case there was testimony that Mr. Jones sustained second and third degree burns and the jury saw photographs of the injuries. There was ample evidence presented from which a jury could conclude that the burns which Sharon Jones inflicted on her husband were "seriously disfiguring" as required to support a conviction for aggravated battery. See *Turner v. State*, 275 Ga. 343 (1) (566 SE2d 676) (2002); *Scott v. State*, 243 Ga. App. 383, 385 (1) (c) (532 SE2d 141) (2000); see generally *Harris v. State*, 223 Ga. App. 661, 662-663 (478 SE2d 458) (1996). Accordingly, we find that a rational trier of fact could find from the evidence adduced at trial proof of Sharon Jones's guilt of this crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Jones next argues that the State failed to prove that the events underlying the charges occurred before the date alleged in the indictment and within the statute of limitation. She contends that the indictment alleged that the events occurred on June 21, 1998, but that all of the evidence at trial related to events that occurred on or about June 24, 1998.

We first note that Jones failed to raise this argument below and, thus, has waived it here. See *Parks v. State*, 246 Ga. App. 888 (1) (543 SE2d 39) (2000). Moreover, even if Jones had preserved these arguments for our review, the alleged error would not require reversal. The indictment in this case stated that the crimes occurred "on or about" June 21, 1998, and the indictment then states that the exact date of the crimes was "unknown to the Grand Jurors."

In proving the time of the commission of an offense the State is not, as a general rule, restricted to proof of the date alleged in the indictment, but is permitted to prove its commission on any date within the statute of limitations. An exception to this rule applies when the indictment specifically alleges that the date or dates are material. But that exception is not applicable here because there was no such allegation. Therefore the trial court correctly considered

that the offenses could have occurred outside of the dates alleged in the indictment.

(Citations and punctuation omitted.) *Grizzard v. State*, 258 Ga. App. 124, 126 (2) (572 SE2d 760) (2002). The indictment was returned on October 26, 1998, and the trial in the case was held on November 16 and 17, 1998. Contrary to Jones's contentions, the evidence showed that she was indicted and tried for crimes which occurred before October 26, 1998, and well within the applicable period of limitations.

3. Jones claims that her trial counsel was ineffective for failing to object to the introduction of evidence which occurred after the June 21, 1998 date alleged in the indictment. As discussed in Division 2, Jones's argument that the indictment was defective lacks merit. Failure of trial counsel to raise a meritless objection is not evidence of ineffective assistance of counsel. *Fults v. State*, 274 Ga. 82, 87 (7) (548 SE2d 315) (2001).

4. Finally Jones asserts that the evidence regarding the false imprisonment claim was insufficient. She contends that there was no evidence that Harry Jones was detained against his will without legal authority and that the evidence showed only that any restraint which was applied to Harry Jones was done so with his permission. False imprisonment occurs "when, in violation of the personal liberty of another, [a person] arrests, confines, or detains such person without legal authority." OCGA § 16-5-41 (a). Contrary to Jones's arguments, there was testimony from GBI Agent Watson that Mr. Jones told him that his wife handcuffed him so that he could not leave his residence. This testimony was substantive evidence of the crime of false imprisonment. *Bailey v. State*, 254 Ga. App. at 420-421 (1). There was also ample circumstantial evidence of false imprisonment introduced through the testimony of various witnesses at trial. Accordingly, we find that a rational trier of fact could find from the evidence adduced at trial proof of Sharon Jones's guilt of false imprisonment beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. at 307.

*Judgment affirmed. Ruffin, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 14, 2003.

*Hagler & Hyles, Richard C. Hagler*, for appellant.
*J. Gray Conger, District Attorney, Mark C. Post, Assistant District Attorney*, for appellee.