In the Supreme Court of Georgia

Decided:      June 2, 2014

S14A0399.  SMITH v. THE STATE.

BENHAM, Justice.

Appellant Steven Phillip Smith appeals his convictions for the felony

murder of Jatinjumar "Justin" Patel and other crimes.[1]  We affirm.

1.  The record viewed in a light most favorable to the verdict shows  that

just after midnight on September 6, 2008, at the time when employees were

_____

[1]The crimes occurred on September 6 and 7, 2008.  On December 3, 2008, a Chatham County grand jury indicted appellant for malice murder, felony murder, three counts of armed robbery, two counts of aggravated assault, three counts of possession of a firearm during the commission of a crime, possession of the tools for the commission of a crime, and possession of a controlled substance with an intent to distribute.  Appellant was tried on June 19 and June 21, 2012, with a jury returning a verdict of guilty on all counts except the drug possession count which was nolle prossed prior to trial.  On August 13, 2012, appellant was sentenced to life in prison for malice murder, life in prison for each count of armed robbery to run concurrently with the life sentence for malice murder, twenty years on one count of aggravated assault to be served consecutively to the life sentence for malice murder, five years for each of two counts of possession of a firearm during the commission of a crime to be served consecutively to the life sentence for malice murder, and five years for possession of the tools for the commission of a crime to be served consecutively to the life sentence for malice murder.  The felony murder count was vacated as a matter of law, and the remaining counts (one count of aggravated assault and one count of possession of a firearm during the commission of a crime) merged as a matter of fact.  Appellant filed for an out-of-time appeal, which was granted, and subsequently filed a motion for new trial on April 5, 2013.  Appellant amended his motion for new trial on June14, 2013, and again on June 24, 2013.  The trial court held a hearing on the motion for new trial as amended and denied it on August 23, 2013.  Appellant filed a notice of appeal on September 23, 2013, and the case was docketed in the January 2014 term of this Court and submitted for a decision to be made on the briefs.

closing for the night, appellant attempted to rob a BP gas station convenience store. During the robbery, appellant, dressed in black and wearing a mask, emerged from behind an ice machine and confronted Jasmatbhai "PK" Praklashkumar and Justin Patel, held them at gunpoint, and told PK to open the door to the store. When PK had difficulty opening the door quickly, appellant shot PK twice in his leg. PK then ran away behind the store and called the police. Meanwhile Justin Patel was shot in the chest and eventually died at the scene. Police arrived and were able to recover bullets from the scene; but neither PK nor his other co-worker Alkesh "Andy" Patel, who was inside the store during the robbery, could identify the gunman. At about 11 a.m. on September 6, appellant hid inside a house that was under construction. Miguel Perez testified that while he was working on some drywall in the house, appellant robbed him at gunpoint and took $143 in cash. While investigating the BP shooting and the Perez robbery, investigators received a tip that appellant was involved in one or both of the crimes. Officers obtained a high school photo of appellant and used it to create a photographic line-up which was

presented to Perez. From that photographic line-up of six individuals, Perez identified appellant as his assailant.[2]

Upon obtaining a positive identification from Perez, police placed appellant's house under surveillance on the evening of September 7 and obtained a warrant for his arrest for the Perez robbery and a search warrant for his house. Later that same night, while police had his house under surveillance, appellant and a confederate held Justin and Shannon Freeman at gunpoint as the Freemans were closing the restaurant at which they were employed. The Freemans testified that the they were pistol whipped and forced inside the restaurant to the office. The two assailants then tied up Justin Freeman and forced Shannon Freeman to open a safe and to give them the money inside it. In addition to money from the safe, the assailants took Shannon's camera and Justin's cell phone. The two men then put the Freemans in a bathroom and left the premises. The Freemans let themselves out of the bathroom once they were sure their assailants were gone and called police. Not long after police got word of the Freemans robbery, appellant was dropped off at his house by someone driving a red Honda Civic. Police watched the house for a few more hours and

---

[2]At trial, Perez also identified appellant in open court as the man who had robbed him.

then executed the arrest and search warrants in the early morning hours of September 8. Police found Justin Freeman's cell phone in the pocket of appellant's pants and they discovered Shannon Freeman's camera inside his house in his sister's room. During a videotaped interview with police, appellant waived his <u>Miranda</u> rights and confessed to the robberies of Perez and the Freemans and confessed to the shooting at the BP station. Appellant also told police where they could find his gun, a .38 caliber revolver, used in all three incidents. A ballistics expert confirmed that the shell casings recovered from the gas station and the bullet taken from Justin Patel's body, were consistent with being fired from appellant's gun.

Appellant challenges the trial court's admission of his confession to police and, in turn, the sufficiency of the evidence related to his convictions for the crimes associated with the BP shooting. This Court has held:

> The standard for determining the admissibility of a defendant's confession is the preponderance of the evidence. To determine whether a confession was voluntarily made, a trial court must consider the totality of the circumstances, and unless clearly erroneous, a trial court's credibility determinations and factual findings relating to the admissibility of a confession must be upheld on appeal. However, we independently apply the law to the facts.

4

(Citations and quotations omitted.) Turner v. State, 287 Ga. 793 (3) (700 SE2d 386) (2010). A confession is voluntary if it is neither induced by the slightest hope of benefit nor the remotest fear of injury. See the former OCGA § 24-3-50.[3] For reasons set forth below, appellant's enumerations of error concerning his confession and the sufficiency of the evidence cannot be sustained.

(a) At the time appellant made a statement to police, he was under arrest for the Perez robbery and suspected of the two other crimes. He was given his Miranda[4] rights before the interrogation commenced and he waived those rights. Within the first twenty minutes of the interrogation, appellant admitted that he shot Justin Patel at the BP station. During the discussion of the BP incident, the police told appellant that there was a surveillance tape showing that the victim lunged at appellant before appellant shot him. The police made statements to appellant to the effect that the shooting was an "accident" in response to the victim lunging at appellant and appellant eventually made inculpatory statements.[5] Appellant contends the trial court erred in admitting the videotaped

---

[3]The corresponding code section in the new Evidence Code is OCGA §24-8-824.

[4] Miranda v. Arizona, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[5]In truth, there was no video footage showing that either Justin Patel or PK Patel ever lunged at appellant. The lead detective testified at trial that the line of questioning framing the incident as

confession into evidence because he contends it was induced by the slightest hope of benefit "as the hope of lighter punishment was clearly implied by the [detective's] excusable accident theory," in violation of the former OCGA § 24-3-50. We disagree. "A hope of benefit generally arises from 'promises related to reduced criminal punishment—a shorter sentence, lesser charges, or no charges at all.' [Cit.]" Dennis v. State, 293 Ga. 688 (2) (748 SE2d 390) (2013). At no point did detectives tell appellant that he would not be charged with murder, that he would be charged with a crime less than murder, or that he would receive lesser punishment if he confessed. In fact, appellant understood that he would be incarcerated for his actions because he twice asked about obtaining a bond and made statements to the effect that he knew he was going to jail. Under these circumstances, there was no violation of OCGA § 24-3-50.

(b) (i) Appellant further argues that if his entire confession was not excludable, then a portion of the interview should have been excluded–specifically that portion of the interview in which he told authorities where to find the gun he used in the crimes. The trial record shows that during

---

an accident was an interrogation technique designed to make the incident seem less serious than it was in order to elicit a truthful confession.

the interrogation, detectives asked appellant about a blue camera found in his house and he told them it belonged to his sister. The detectives then told appellant that they knew the camera belonged to the Freemans and that his sister had lied to police in an effort to back up appellant's story. The following conversation transpired between the police and appellant:

Detective: Well, I gotta bring something back to give to my lieutenant to convince him that it's cool if we just ignore the fact that [your sister is] lying.

[Appellant]: Tell him it's on me and she ain't had no partake [sic] in it.

Detective: No. I mean, we know it[']s true. We know that she's just doing it to cover for you. The fact of the matter is, we've got two detectives at [your] house right now and she lied to them. Let's fix it. Give me something–give me something more. I can call back and say, look, Steven found out his sister was in a jam. He wrote down the name of the [other man who participated in the Freemans robbery] on the paper, why don't you all just cut her loose and we'll overlook it. ...She lied to them about the camera. She tried to say it was hers for over a year. They saw the pictures of her on the camera. They got the serial number from the victims from the [robbery] tonight, so they know she's lying about it. Let's not let her get caught up. There's no reason for her to be in this. She did what she did out of love. Let's not punish her for loving you, okay? Make a choice between the man that set this [robbery] up and set you up with this [robbery] and your sister. And you love one of them more. I know the answer and you know the answer. Why don't you write the name of the person you love less on that piece of paper?

[Appellant]: I don't know his name.  What I can do, I can give you all the pistol.[6]

Detective: Okay.  I can do that.  That's fair.  In exchange–

[Appellant]: But my sister don't go to jail.

Detective: Deal.  Where's the pistol at, man?

At the pretrial suppression hearing, the lead detective admitted he recalled making statements to the effect that appellant's sister could be subject to arrest and the trial court nevertheless ruled the entire confession was admissible. Appellant argues that this portion of the confession should have been excluded because it was coercive and, likewise, the gun and ballistics evidence should have been excluded as "fruit of the poisonous tree."   Appellant contends that without the gun, or the ballistics testing, his confession to the BP shooting was uncorroborated (see former OCGA § 24-3-53[7]) and the evidence insufficient to convict him of the crimes related to that incident.  Appellant's argument lacks merit.

---

[6]Prior to making this statement, appellant had told authorities that he threw the gun over a bridge.

[7]OCGA §24-3-53 is now codified as OCGA §24-8-823 as part of the new Evidence Code.

The statement that appellant's sister might be subject to arrest for lying to police about an item taken in a robbery is a "mere truism" and not the type of statement that would necessarily render a confession involuntary under former OCGA § 24-3-50[8] as being a hope of benefit or a threat of injury. See Smith v. State, 291 Ga. App. 535, 537 (662 SE2d 305) (2008) (the suggestion that defendant's wife was being targeted for arrest did not render the defendant's confession involuntary). The statements by police likewise did not involve physical or mental torture, the hallmark of inducement by a fear of injury. See Griffin v. State, 257 Ga. App. 167, 168 (570 SE2d 611) (2002) (police statement that defendant's girlfriend might be in trouble for driving the getaway car was not an inducement by fear of injury because such statement did not amount to physical or mental torture). Furthermore, appellant told police that the camera belonged to his sister and so his own actions in lying to investigators placed his sister under suspicion. Accordingly, the trial court did not err in finding this portion of appellant's confession to be admissible.

(ii) We have held that:

---

[8] This provision is now encoded as OCGA §§ 24–8–824 as part of the new Georgia Evidence Code which took effect on January 1, 2013.

[A] confession, freely and voluntarily made, is evidence of the highest character, and any corroboration thereof will be sufficient to sustain a conviction. When a jury finds that a confession is corroborated, it need not find proof of guilt beyond a reasonable doubt from evidence separate from and wholly independent of the confession, and it instead may consider the confession along with other facts and circumstances independent of and separate from it.

(Citations and punctuation omitted.) Merritt v. State, 292 Ga. 327, 329 (1) (737 SE2d 673) (2013). In this case, appellant's confession was corroborated by both witness testimony and physical evidence. Appellant told investigators that he hid behind an ice machine before approaching the victims at the BP station. This statement was corroborated by the trial testimony of PK Patel who stated that the assailant came out from behind an ice machine. In addition, the ballistics expert confirmed that the bullets recovered from the scene and the bullet recovered from Justin Patel's body were fired from the gun recovered by authorities. The evidence was sufficient for a rational jury to find appellant guilty beyond a reasonable doubt of the crimes related to the BP shooting and all the other crimes for which he was convicted. Jackson v. Virginia, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant contends the State failed to prove venue for the BP shooting. This allegation is not borne out by the trial record. Officer Ryan Smith of the

10

Savannah-Chatham Metropolitan Police Department testified at trial that he was the first police officer to respond to the scene of the BP shooting. During his testimony, the State presented a demonstrative map of the area, which included the BP gas station, and the prosecutor specifically asked Officer Smith whether the area depicted in the map was within Chatham County and Officer Smith replied in the affirmative.[9] The presentation of the map during trial coupled with Officer Smith's testimony was sufficient to establish venue of the BP shooting. See Armstrong v. State, 286 Ga. 420, 421 (2) (688 SE2d 629) (2010).

3. Appellant alleges his trial counsel was ineffective for failing to advance arguments before and during trial that the portion of his confession to police regarding his sister was inadmissible.

> In order to prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct. If a defendant fails to meet his burden on one prong of the two-prong test, then the other prong need not be reviewed by the Court.

---

[9]At trial, the following colloquy occurred between Officer Smith and the prosecutor:
Q. ...Now, the areas shown in that map ...is all of that area within Chatham County?
A. Yes, sir.

(Citations omitted.) <u>Barge v. State</u>, 294 Ga. 567 (2) (755 SE2d 166) (2014).

Since we have determined in Division (1) (b) (ii), supra, that the trial court did not err in admitting the portion of appellant's confession concerning his sister, his allegation that trial counsel was deficient for failing to pursue arguments against the admissibility of this evidence cannot be sustained.

Judgment affirmed. All the Justices concur.