## S16A0884. SHEPARD v. THE STATE.
(794 SE2d 121)

BLACKWELL, Justice.

Rodney Gordon Shepard was tried by a Clarke County jury and convicted of murder and the unlawful possession of a firearm during the commission of a crime, both in connection with the fatal shooting of David Lumpkin. Following the denial of his motion for new trial, Shepard appeals, contending that the evidence is insufficient to sustain his convictions, that the trial court erred when it denied his motion to suppress a statement that he gave to law enforcement officers, that the trial court erred when it charged the jury, and that he was denied the effective assistance of counsel. Upon our review of the record and briefs, we see no error, and we affirm.[1]

1. Viewed in the light most favorable to the verdict, the evidence shows that Shepard, Eric Hassel, and Terrence White were friends. On November 13, 2006, Lumpkin and another man robbed White, and White wanted revenge. White subsequently gave a gun to Shepard, which Shepard gave to Hassel. Early on the morning of November 18, Shepard and Hassel went to a house in Athens, where Lumpkin was sleeping, and where Shepard intended to lure Lumpkin outside by offering to purchase cocaine from him. Timothy Bradford let Shepard and Hassel into the house, and after awhile, the three men walked onto the porch, where they talked. Bradford eventually went back inside, leaving the door open. About two minutes later, a hooded man came through the door and fired multiple gunshots at Lumpkin, who still was asleep. Lumpkin was wounded by three shots, including one to his abdomen, which proved fatal. After shots

---

[1] Lumpkin was killed on November 18, 2006. A Clarke County grand jury indicted Shepard and Eric Hassel on March 26, 2008, charging each with malice murder, two counts of felony murder, one count of aggravated assault, four counts of the unlawful possession of a firearm during the commission of a crime, and one count of unlawful possession of a firearm by a convicted felon. In addition, Hassel alone was charged with additional counts of felony murder, unlawful possession of a firearm during the commission of a crime, and unlawful possession of a firearm by a convicted felon. In August and September 2008, Shepard was tried, and his jury returned a verdict on September 3, finding Shepard guilty of felony murder, aggravated assault, and the unlawful possession of a firearm during the commission of a crime. The jury acquitted Shepard of the other counts. Shepard was sentenced to imprisonment for life for felony murder and a consecutive term of imprisonment for five years for the unlawful possession of a firearm during the commission of a crime. The aggravated assault merged into the felony murder. On September 12, 2008, Shepard timely filed a motion for new trial, he amended it on October 17, 2013, and the trial court denied his motion on August 26, 2014. Shepard timely filed a notice of appeal on September 12, 2014, and he amended it on April 1, 2015. The case was docketed in this Court for the April 2016 term and submitted for decision on the briefs.

Hassel was tried after Shepard, and he was convicted of felony murder, the unlawful possession of a firearm during the commission of a crime, and the unlawful possession of a firearm by a convicted felon. Hassel appealed, and we affirmed his convictions. See *Hassel v. State*, 294 Ga. 834 (755 SE2d 134) (2014).

were fired, Shepard and Hassel ran from the house to a nearby apartment, where their friend, Binika Hankton, lived. After Hankton let them into the apartment, Hassel gave a gun to Shepard, and they left through the back door.

Shepard went to New Orleans, but he later spoke by telephone with Hankton. Their conversations were recorded by investigators. In those conversations, Shepard said that he would have people call a police tip hotline to confuse the police investigation, that he had hidden the gun in a particular location, and that White had paid him in cash and cocaine and had agreed to help Hankton as needed. Other evidence showed that White and a friend had, in fact, contributed money toward Hankton's rent, that investigators found a gun in the area that Shepard described, and that forensic testing confirmed that two bullets recovered from Lumpkin's body (as well as other bullets found at the crime scene) had been fired from that gun.

Shepard was arrested in New Orleans, and when he was interviewed by detectives, he denied the shooting and said that he was paid $20,000 to stay quiet. He made a number of other incriminating statements, however, that were consistent with other evidence presented at trial. And when Shepard was returned to Georgia and held in the same jail as Hassel, Shepard tried to pass notes to Hassel in which Shepard attempted to confirm that they were telling the same story.

Disputing the sufficiency of the evidence, Shepard points to evidence suggesting that Hassel, not Shepard, fired the fatal shot. The State was not required, however, "to prove that [Shepard] himself fired the fatal shot, so long as it proved that he was a party to the fatal shooting." *Pyatt v. State*, 298 Ga. 742, 745 (1) (784 SE2d 759) (2016) (citing OCGA § 16-2-20, which defines parties to a crime). To prove that Shepard was a party to the fatal shooting, the State had to prove that Shepard and the shooter shared a common criminal intent, and as we have explained, "such shared criminal intent may be inferred from the person's conduct before, during, and after the crime." *Grant v. State*, 298 Ga. 835, 837 (1) (785 SE2d 285) (2016) (citation omitted). In this case, one might reasonably infer from the evidence that Shepard shared a criminal intent with respect to the shooting, and we conclude that the evidence was more than sufficient to authorize a rational jury to find beyond a reasonable doubt that Shepard was guilty of the crimes of which he was convicted, either directly or as a party to the crime. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also *Hassel v. State*, 294 Ga. 834, 837 (1) (755 SE2d 134) (2014) ("While the evidence is unclear as to whether Hassel was the actual triggerman

in the shooting, this uncertainty is of no consequence, as there was ample evidence to inculpate Hassel as a party to the crimes." (Citation omitted)).

2. We now turn to Shepard's contention that the trial court erred when it denied his motion to suppress the statement that he made to detectives after he was arrested in New Orleans. According to Shepard, the detectives told him not only that his cooperation would be made known to the prosecuting attorneys, but that they would act as his advocates and pass along his requests for lenient treatment. Shepard argues that these assurances amounted to an improper promise of benefit. See former OCGA § 24-3-50 (confession is inadmissible if it was "induced by another by the slightest hope of benefit").[2] We disagree.

The evidence upon which Shepard relies shows that one detective said that he would "stand with [Shepard] 100%," and the same detective answered, "yeah," when Shepard asked if he possibly could get "an arrangement." And when Shepard said that he wanted to make a "deal" with the district attorney, the other detective also responded, "yeah." After the second detective used the term "accessory," Shepard asked if he would "get time" for that, and the detective said that it was something they had to discuss with the district attorney. Shepard also expressed his willingness "to give you what you need because you can help me," and he wrote down the terms of a possible arrangement to be passed along to the district attorney, including his offer to plead guilty to a lesser charge without jail time.

"This Court consistently has held that the statutory reference to 'the slightest hope of benefit' means promises of reduced criminal punishment — a shorter sentence, lesser charges, or no charges at all." *Finley v. State*, 298 Ga. 451, 454 (3) (782 SE2d 651) (2016) (citation and punctuation omitted). We have reviewed the evidence and conclude that it supports the trial court's finding that Shepard's statement was not given as a result of any promise of reduced criminal punishment. The detectives never told Shepard that he would not be charged with murder, that he would be charged with a lesser crime, or that he would, in fact, receive a shorter sentence if he gave a statement. See *Smith v. State*, 295 Ga. 283, 285 (1) (a) (759 SE2d 520) (2014); *Woodall v. State*, 294 Ga. 624, 629 (4) (754 SE2d 335) (2014). The noncommittal statements by the detectives that Shepard complains about do not approach the type of promise that

---

[2] This case was tried before January 1, 2013 under the old Evidence Code. See Ga. L. 2011, pp. 99, 214, § 101. We note, however, that a substantially identical statute is contained in the new Evidence Code at OCGA § 24-8-824.

would render his statement involuntary. See *Wilson v. State*, 293 Ga. 508, 510 (2) (748 SE2d 385) (2013). The detectives merely acknowledged that Shepard *wanted* a deal, that he perhaps *could* get some arrangement, and that they *would* talk with the district attorney, but it was clear to Shepard that any agreement would require the assent of the district attorney. See *Samuels v. State*, 288 Ga. 48, 50 (2) (701 SE2d 172) (2010) (officer's "suggestion that he may at some point be willing to talk to the district attorney did not constitute a reward of a lighter sentence"); *Stinski v. State*, 281 Ga. 783, 784-785 (2) (a) (642 SE2d 1) (2007); *Selley v. State*, 237 Ga. App. 47, 49 (3) (514 SE2d 706) (1999) (it did not constitute a prohibited "hope of benefit" for a detective to tell the defendant that "he would talk to the prosecutor and see if he could get [the defendant] a good deal if [he] cooperated"). Cf. *Canty v. State*, 286 Ga. 608 (690 SE2d 609) (2010) (defendant's confession was induced by a hope of benefit when told that confessing could result in a "shorter term"). Shepard's "personal belief that talking to detectives would gain him favor from the State does not render his statements involuntary under former OCGA § 24-3-50." *Rivers v. State*, 296 Ga. 396, 400 (3) (768 SE2d 486) (2015) (citation omitted). Because the record supports the trial court's finding that, under the totality of circumstances, Shepard's statement was not induced by a promise of reduced criminal punishment, the court did not err when it denied his motion to suppress that statement.

3. Shepard also contends that the trial court erred when it charged the jury on the law concerning conspiracy. According to Shepard, this charge was not warranted because the indictment did not allege a conspiracy and there was no evidence to support the charge. It is not error, however, "for the trial court to charge the jury on the law of conspiracy when the evidence introduced at trial supports the instruction, even when the defendant is not indicted for conspiracy. . . . And slight, circumstantial evidence can form a proper evidentiary foundation for [that] charge[ ]." *Pyatt*, 298 Ga. at 749 (4) (citations and punctuation omitted). Moreover, a jury charge on the law of conspiracy can be supported by "evidence of a common design as well as an express agreement" to commit a crime. *Hayes v. State*, 298 Ga. 98, 100 (2) (a) (779 SE2d 609) (2015). See also *Turner v. State*, 275 Ga. 343, 345 (2) (566 SE2d 676) (2002) ("The law is clear that an express agreement is not needed to establish a conspiracy." (Citation omitted)). "The State may prove a conspiracy by showing that two or more persons tacitly came to a mutual understanding to pursue a criminal objective." *Edge v. State*, 275 Ga. 311, 313 (6) (567 SE2d 1) (2002) (citation and punctuation omitted). And "[i]t is well established that presence, companionship and conduct [that discloses a common design] before and after the offense are circumstances which

may give rise to the existence of a conspiracy." *Turner*, 275 Ga. at 345 (2). In this case, the evidence was sufficient to support an inference that Shepard and Hassel had a mutual, if only tacit, agreement to lure Lumpkin outside and shoot him.[3] See id. See also *Williams v. State*, 267 Ga. 308, 309 (2) (477 SE2d 570) (1996); *Drane v. State*, 265 Ga. 255, 258 (4) (455 SE2d 27) (1995).

4. Last, Shepard claims that he was denied the effective assistance of counsel because his lawyer failed to object and move for a mistrial when the State elicited improper character evidence and because the lawyer failed to request a limiting instruction regarding Shepard's prior felony convictions. To prevail on a claim of ineffective assistance, Shepard must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Shepard must show that the lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also *Kimmelman v. Morrison*, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Shepard must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B). See also *Williams v. Taylor*, 529 U. S. 362, 391 (III) (120 SCt 1495, 146 LE2d 389) (2000). This burden is a heavy one, see *Kimmelman*, 477 U. S. at 382 (II) (C), and we conclude that Shepard has failed to carry it.

Shepard complains of his lawyer's failure to object to Bradford's testimony that Hassel and Shepard "acted like they came by for some crack," as well as other testimony given by Bradford about their plan to offer to purchase cocaine from Lumpkin. But such testimony was relevant to show the pretext that Shepard and Hassel planned to use to draw Lumpkin out of the house as part of their common purpose to assault and murder him. Consequently, Bradford's testimony was

---

[3] Contrary to additional argument by Shepard, it was not confusing to the jury or otherwise error for the trial court to instruct both on conspiracy and parties to a crime. See *Mangum v. State*, 274 Ga. 573, 578 (3) (d) (555 SE2d 451) (2001). And the allegedly inconsistent verdict of not guilty of unlawful possession of a firearm by a convicted felon and guilty of unlawful possession of a firearm during the commission of a felony does not show that the instruction on conspiracy confused and misled the jury, as inconsistent verdicts may occur for any number of reasons and do not provide any clear indication regarding the jury's deliberations. See *Giddens v. State*, 299 Ga. 109, 118-119 (2) (b) (786 SE2d 659) (2016).

admissible as evidence of an integral part of the res gestae[4] of the crime even though it placed Shepard's character in evidence. See *Lee v. State*, 280 Ga. 521, 522 (2) (a) (630 SE2d 380) (2006). Moreover, the decision not to object to the testimony was consistent with Shepard's admission to the detectives that he went to the house to buy cocaine, as well as his lawyer's closing argument that Shepard was present at the house merely to purchase drugs. See *Hargrove v. State*, 291 Ga. 879, 882 (2) (b) (734 SE2d 34) (2012). Accordingly, the failure of Shepard's lawyer to object to Bradford's testimony about Shepard's apparent attempt to purchase cocaine does not show that Shepard was denied the effective assistance of counsel.

As for Shepard's remaining claim of ineffective assistance, the record shows that, when his convictions for two counts of theft by taking were admitted into evidence, the trial court did give a proper instruction concerning their limited use. See *Ballard v. State*, 297 Ga. 248, 253 (6) (e) (773 SE2d 254) (2015). And the court later repeated that limiting instruction during its charge to the jury after explaining the essential elements of unlawful possession of a firearm by a convicted felon. See *Poole v. State*, 291 Ga. 848, 857 (8) (734 SE2d 1) (2012); *Lee*, 280 Ga. at 522 (2) (b). The failure of Shepard's lawyer to request a limiting instruction therefore "had no effect on the outcome of the trial." *Ballard*, 297 Ga. at 253 (6) (e) (citation and punctuation omitted).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 21, 2016.

*David G. Williams, Jr., David R. Phillips*, for appellant.

*Kenneth W. Mauldin, District Attorney, Brian V. Patterson, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mary C. Greaber, Assistant Attorney General*, for appellee.

---

[4] We note that "the new Evidence Code does not use the term 'res gestae.' " *Johnson v. State*, 292 Ga. 785, 789 (4), n. 4 (741 SE2d 627) (2013).