294 Ga. 834
FINAL COPY

S13A1382. HASSEL v. THE STATE.

HUNSTEIN, Justice.

Appellant Eric Hassel was convicted of felony murder and related offenses in connection with the November 18, 2006 shooting death of David Morris Lumpkin. Hassel appeals the denial of his motion for new trial, asserting insufficiency of the evidence, ineffective assistance of counsel, and evidentiary error. Finding no error, we affirm.[1]

---

[1] Together with co-indictee Rodney Shepard, Hassel was charged in a multi-count indictment handed down by an Athens-Clarke County grand jury in January 2008. Hassel was indicted on one count of malice murder, three counts of felony murder, one count of aggravated assault, five counts of firearm possession during the commission of a crime, and two counts of firearm possession by a convicted felon. Following a pre-trial appeal in which Hassel challenged the trial court's denial of his plea in bar and motion to dismiss on speedy trial grounds, see Hassel v. State, 284 Ga. 861 (672 SE2d 627) (2009) (affirming denial of plea in bar and motion to dismiss), the case proceeded to a jury trial against Hassel alone. Shepard was tried and convicted in separate proceedings. At the conclusion of trial on May 1, 2009, Hassel was acquitted of malice murder and the associated firearm possession count, but was convicted on all other counts. He was sentenced to life imprisonment for felony murder; a consecutive five-year term for firearm possession during the commission of a crime; and an additional five-year consecutive term for firearm possession by a convicted felon. The remaining convictions were vacated by operation of law or merged for sentencing purposes. Through trial counsel, Hassel filed a timely motion for new trial, which, through new appellate counsel, was amended in July 2011 and again in August 2011. Hearings were held on October 3, 2011 and January 30, 2012, and the trial court denied the new trial motion on April 20, 2012. On May 1, 2012,

Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial established as follows. In the early morning hours of November 18, 2006, David Morris Lumpkin was shot and killed at a residence on Moreland Avenue in Athens, Georgia. The residence was inhabited by its owners, Jerome Hemphill and Deborah Echols, as well as various family members, friends, and occasional homeless visitors who stayed there overnight or resided there on a temporary basis. Drug transactions often took place in the driveway of the residence and at other locations nearby. Appellant Eric Hassel, a convicted felon who dated Hemphill's sister, had lived at the house in the past and continued to be a frequent visitor there.

Hassel and his friend Rodney Shepard were friends with Terrence White, who, a few days prior to the shooting, had been robbed at gunpoint of his car, money, jewelry and drugs. Victim Lumpkin's girlfriend had heard rumors that Lumpkin was involved in the robbery, which Lumpkin admitted to her and others that he had helped set up. There was evidence that White himself suspected Lumpkin of participating in the robbery.

Hassel filed a notice of appeal. The appeal was docketed to the September 2013 term of this Court and was thereafter submitted for decision on the briefs.

At the time of the shooting, Lumpkin and several other people were asleep in the living room at the Moreland Avenue house. Minutes before the shooting, witness Kathleen Robinson heard a knock on the door and observed Timothy Bradford open it, allowing Hassel and Shepard to enter. Robinson testified that Shepard began talking to Bradford, Hassel then exited the house, and Shepard and Bradford exited soon thereafter. Several minutes later, Robinson testified, Bradford reentered alone, leaving the door open, and a few minutes after that, a person dressed in black came inside, shot Lumpkin, and then fled.

Witness Daniel Gbum, who was present at the Moreland Avenue house that night, testified that, prior to the shooting, Hassel had twice asked him to try to get Lumpkin to come outside the house, but that Lumpkin had refused both times. Gbum also testified that, at one point while he was standing outside the house with Hassel, Shepard arrived and whispered, "Where is he? Where is he?" to which Hassel responded, "He's coming, he's coming."

Lumpkin's girlfriend, Latoya Brown, testified that a neighbor on Moreland Avenue had told her he saw Hassel and Shepard running down the

driveway away from the house immediately after the shooting.[2] Brown also testified that, earlier on the evening of the shooting, Hassel had appeared, uninvited, at a party she and Lumpkin were hosting, looking for Lumpkin. When she and Lumpkin arrived back at the Moreland Avenue house after the party, Hassel was there. Hassel asked Lumpkin to walk down the street with him, which Lumpkin refused to do. Later, Brown testified, she was dozing in the living room when she heard Hassel's voice and, minutes later, the blast of the gunshots that killed Lumpkin.

Binika Hankton, a friend of Hassel and Shepard, testified that, on the day before the shooting, she had been at her home with Hassel, Shepard, White, and others, and that White was in possession of an automatic handgun. Hankton also testified that, shortly after the time of the shooting, Shepard and Hassel, who was wearing black, returned to her house in a frantic state. Hankton told detectives that she saw Hassel hand an automatic handgun to Shepard. Hankton testified that Hassel then grabbed a bag, and the two exited through the back

_____

[2] Brown's testimony about this statement was admitted after the neighbor had testified and denied having identified the assailants. See Gibbons v. State, 248 Ga. 858, 862 (286 SE2d 717) (1982) (prior inconsistent statement of witness who testifies and is subject to cross-examination is admissible as substantive evidence).

door.

Hankton, who cooperated in the investigation, recorded several conversations she had with Shepard after the shooting, in which she described being worried about the police questioning her and he acknowledged his and Hassel's involvement in the shooting. In one of the recordings, which was played for the jury, Shepard told Hankton that he and Hassel had discarded the murder weapon in some trees behind her house. Upon receiving this information, the GBI searched Hankton's yard and located an automatic handgun in a wooded area behind her home. Forensic testing matched this gun with the shell casings found at the scene of the shooting and the projectiles recovered from Lumpkin's body.

Hassel wrote a letter to Hankton shortly after the shooting, after being arrested on an unrelated shoplifting charge, stating:

> I need bail money [sic] tell your boys I expected to be out already . . . I heard rumors you are telling stories. Please keep quiet. . . . I want it clear that I understood that I'd be treated better than this. My end of the bargain is being upheld. Others need to step up 4 [me] . . . something 2 let me know [what's] up.

Another statement by Hassel was admitted through witness Deborah

Echols, who testified that Hassel told her in December 2006 that

> they wasn't [sic] supposed to kill [Lumpkin]. It wasn't supposed to happen at my house. They were supposed to lure him out the yard, down the driveway, and ask him where the drugs and the money and the jewelry was [sic]. . . . [Hassel] said he told [Shepard] not to kill [Lumpkin] there in — you know — not at my house.

Hassel told Echols that he had been outside the house when Shepard entered and shot Lumpkin.

1. The evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Hassel was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). While the evidence is unclear as to whether Hassel was the actual triggerman in the shooting, this uncertainty is of no consequence, as there was ample evidence to inculpate Hassel as a party to the crimes. See OCGA § 16-2-20 (persons "concerned in the commission of a crime," by way of intentionally aiding and abetting or intentionally advising, encouraging or counseling another to commit such crime, may be charged with and convicted of commission of the crime). Specifically, witness testimony indicated that Hassel repeatedly sought out Lumpkin in the hours leading up to the murder and attempted to lure him away from safe surroundings. Multiple witnesses testified

6

that, minutes before the murder, Hassel and Shepard entered the residence together, and after the shots were fired, both were seen fleeing the scene. Shortly after the shooting, Hassel and Shepard frantically entered Hankton's apartment, where Hassel handed Shepard an automatic handgun, and then quickly exited out the back of her apartment, where the murder weapon was ultimately located. Hassel's letter to Hankton, stating that he was "holding up his end of the bargain," indicated his participation in a scheme related to the crime, a fact further corroborated by his damning statements to Echols. Hassel's enumeration of error on this issue is without merit.

2. Hassel contends his trial counsel failed to conduct a thorough investigation into his defense and thereby rendered ineffective assistance of counsel. To establish ineffective assistance of counsel, a defendant must show that his trial counsel's performance was professionally deficient and that but for such deficient performance there is a reasonable probability that the result of the trial would have been different. Strickland v. Washington, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984); Wesley v. State, 286 Ga. 355 (3) (689 SE2d 280) (2010). To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all

7

the circumstances and in the light of prevailing professional norms." Romer v. State, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of reasonable professional performance. Id. Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. Id. If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the Strickland test, this Court is not required to examine the other. See Green v. State, 291 Ga. 579 (2) (731 SE2d 359) (2012).

Hassel specifically contends that trial counsel rendered deficient performance by neglecting to interview Rodney Shepard or Terrence White, both of whom were integral to the State's theory of the case. This claim was explored at the new trial hearing, at which trial counsel testified that he spoke with Shepard's attorney, who indicated that Shepard would not agree to be interviewed. Trial counsel also knew that Shepard, who had elected not to testify at his own trial, was appealing his conviction at the time of Hassel's trial, and thus counsel believed he would likely invoke his Fifth Amendment rights

8

if called to testify at Hassel's trial. Thus, counsel's failure to interview Shepard was attributable to Shepard's unavailability, not counsel's deficient performance. Moreover, in light of the defense's strategy of portraying Shepard as the primary perpetrator, it was unlikely that Shepard's version of events would have been helpful to Hassel in any event.[3]

As for White, Hassel's counsel testified that he recalled reviewing a summary of his police interview, in which White denied involvement and claimed an alibi. In addition, a defense investigator in the case testified that he had attempted to contact White through several channels but had been unable to locate him. Thus, the defense made a reasonable attempt during the investigation to get White's account of events and did not perform deficiently. In addition, Hassel has failed to establish that White, who did appear at the new trial hearing but invoked his Fifth Amendment rights, would have offered any information or testimony helpful to Hassel's defense. White has thus failed to

---

[3] While we note that Shepard did testify at the new trial hearing and indicated that neither he nor Hassel had any involvement in the shooting, the trial judge found this testimony "self serving, contradictory to other statements he has made to police, and not believable." We defer to the trial judge in these credibility determinations. See generally Battles v. State, 290 Ga. 226, 230 (719 SE2d 423) (2011). See also Silvers v. State, 278 Ga. 45, 48 (3) (597 SE2d 373) (2004) ("'[t]he once-unavailable defendant who now seeks to exculpate his co-defendant lacks credibility'").

9

show any prejudice in this respect. Accordingly, Hassel's ineffectiveness claims must fail.

3. In his final enumeration, Hassel contends that the trial court erred by admitting the hearsay statements Shepard made to Hankton in their audiotaped telephone conversations played for the jury at trial. The trial court held these statements admissible as declarations of a co-conspirator under former OCGA § 24-3-5, which at the time provided that "the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all."[4] This exception to the hearsay rule applies to statements made by co-conspirators not only leading up to and during the underlying crime but also afterward, during the concealment phase of the conspiracy. See <u>Allen v. State</u>, 288 Ga. 263 (4) (702 SE2d 869) (2010).

In this case, there was ample evidence to establish the existence of a conspiracy between Hassel and Shepard to exact revenge against Lumpkin in some form for his role in the robbery of White. A conspiracy consists of an agreement between two or more persons to commit a crime. <u>Griffin v. State</u>,

---

[4]Under the new Georgia Evidence Code, the co-conspirator hearsay exception is now codified at OCGA § 24-8-801 (d) (2) (E).

294 Ga. 325 (751 SE2d 773) (2013). Here, Hassel's statement to Echols regarding the shooting clearly reflects an agreement between Hassel and Shepard to confront Lumpkin, and Hassel's statement in his letter to Hankton that he was holding up "his end of the bargain" further supports the finding of such an agreement. These statements, in combination with the evidence regarding Hassel's actions leading up to and after the shooting, are more than sufficient to sustain the finding of a conspiracy.

The statements of Shepard, a co-conspirator, were made to Hankton after the shooting and while the identity of those complicit therein were still being concealed. Therefore, they clearly fall within the ambit of former OCGA § 24-3-5. See Allen, 288 Ga. at 267 (4). Contrary to Hassel's assertion, Shepard's statements to his friend Hankton were not testimonial in nature so as to implicate Hassel's right of confrontation under Crawford v. Washington, 541 U. S. 36 (124 SCt 1354, 158 LE2d 177) (2004). See Young v. State, 291 Ga. 627 (3) (732 SE2d 269) (2012); Allen, 288 Ga. at 267 (4).

Judgment affirmed. All the Justices concur.

Decided February 24, 2014 – Reconsideration denied March 28, 2014.

Murder. Clarke Superior Court. Before Judge Haggard.

Jana W. Jacobson, for appellant.

Kenneth W. Mauldin, District Attorney, Brian V. Patterson, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Benjamin H. Pierman, Assistant Attorney General, for appellee.