302 Ga. 156
FINAL COPY

S17A0873.  THE STATE v. WILKINS.

BOGGS, Justice.

The State appeals from the trial court's order granting Nathaniel Willie Wilkins' pretrial motion in limine to exclude incriminating statements made by his co-defendant Michael Dontaa Jones with regard to a 2013 double murder. The trial court held that some of the statements, while made by a co-conspirator, were not made "in furtherance of the conspiracy" and thus did not fall within the exception to the hearsay rule provided by OCGA § 24-8-801 (d) (2) (E). Because the trial court did not abuse its discretion in so doing, we affirm.

Wilkins and Jones were indicted by a Chatham County grand jury for malice murder, felony murder, and aggravated assault arising from the execution-style shootings of Forrest Ison and Alice Stevens at their home in Thunderbolt, Georgia. Jones' case was severed from that of Wilkins, and he was tried in April 2016 and found guilty on all counts. Most of the statements

complained of here were admitted into evidence at Jones' trial.[1] The State expects the evidence to show that Wilkins, Jones, and Tracy Burgess, the driver of the getaway car,[2] attempted to avoid arrest after the murders by hiding in the homes of friends and family members in Georgia and South Carolina. During that time, Jones allegedly made a number of incriminating statements to witnesses:[3]

> (1) A witness who worked with Jones testified at his trial that Jones displayed a pistol in his waistband and told the witness that the male victim got him fired and he and appellee lay in wait for him, "caught them at their house and went to rob them . . . [the male victim] went bucking so he shot him"; his female companion "went

---

[1] Wilkins argues on appeal that the State failed to preserve this issue for appellate review because it consented to severance of his trial from that of Jones. But the motion to sever filed by Wilkins was based on a potential Bruton violation, Bruton v. United States, 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968), and the State's argument at the pretrial hearing referenced by Wilkins dealt only with Bruton, not the co-conspirator exception to the hearsay rule. These are separate issues, see, e.g., Favors v. State, 296 Ga. 842, 845 (2) (770 SE2d 855) (2015), and Wilkins' contention therefore is without merit.

[2] Burgess, who is Wilkins' sister and Jones' former girlfriend, was indicted separately and had not gone to trial at the time of her testimony at Jones' trial. She testified that she was offered a reduction in charges in exchange for her testimony.

[3] In its brief, the State quotes the alleged statements, but some do not appear in the record. Grand jury testimony and a partial transcript from Jones' trial provide the text of some statements, but the entire trial transcript is not part of this record; moreover, some witnesses did not testify at Jones' trial. As the trial court noted, the content of some statements is available only through police summaries or an e-mail synopsis prepared by the State in connection with its motion in limine.

to crying and yelling so we shot that b---- too."[4]

(2) An acquaintance of Jones and Wilkins informed the police that, while Jones and Burgess were at the witness' home, Jones stated that he and Wilkins were involved in a homicide. No sworn testimony appears in the record, and a police report narrative gives only the gist of the statement, but the State contends that the witness saw a gun which Jones concealed at his house.

(3) Jones' estranged wife testified before the grand jury that Jones told her that he "did something horrible" and "shot somebody." The trial testimony referenced by the State is not included in the record.

(4) A police report states that Jones told another witness that he "got messed up in Thunderbolt." The trial court noted in its order that this witness did not testify at Jones' trial, but his expected testimony was provided in the State's brief.

(5) Another police report states that Jones told Burgess' stepsister that an attempted robbery failed and that Wilkins "got cold feet," so Jones shot the male victim, and then Wilkins shot the female victim. The trial testimony referenced by the State does not appear in the record, but the State contends the witness testified that she was trying to get to know her stepsister, "but they used me for something totally different."

(6) Burgess testified at Jones' trial that Jones told her "he got another body." She also testified, outside the presence of the jury, that Jones wrote her a letter from jail instructing her to put the blame for the murders on Wilkins and a fictitious third party.[5]

Before trial, Wilkins filed a motion in limine. In an omnibus order, the trial

---

[4] This witness also testified that Jones and Wilkins together showed him the gun and a bloody t-shirt that was used to clean the gun, hidden in the trunk of Wilkins' car. The trial court reserved ruling on whether these statements could be construed as adoptive admissions under OCGA § 24-8-801 (d) (2) (B), and that question is not before us.

[5] After hearing this testimony, the State withdrew the line of questioning, and Jones' counsel also declined to question the witness regarding Jones' letter.

court excluded these six statements. It held that statements made outside Wilkins' presence were not in furtherance of the conspiracy and were not admissible. From this order, the State appeals.

The admission of a co-conspirator's statements is governed by OCGA § 24-8-801 (d) (2) (E), which provides:

> (2) **Admissions by party-opponent**. Admissions shall not be excluded by the hearsay rule. An admission is a statement offered against a party which is:
> . . .
> (E) A statement by a coconspirator of a party during the course and in furtherance of the conspiracy, including a statement made during the concealment phase of a conspiracy. A conspiracy need not be charged in order to make a statement admissible under this subparagraph.

This provision differs substantially from former OCGA § 24-3-5, which stated: "After the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all."

Under Georgia decisions construing the former Code section, "[t]his exception to the hearsay rule applie[d] to statements made by co-conspirators not only leading up to and during the underlying crime but also afterward, during the concealment phase of the conspiracy. [Cit.]" Hassel v. State, 294 Ga.

4

834, 839 (3) (755 SE2d 134) (2014). Moreover, in cases decided under the former Code section, admissible statements included not only those in which a co-conspirator attempted to pursue or conceal the conspiracy, but also statements which simply recounted the conspirators' participation in the original crime. See, e.g., Marchman v. State, 299 Ga. 534, 544-545 (9) (787 SE2d 734) (2016) (co-conspirator fled state and sought refuge with a friend to whom he made incriminating statements regarding crime spree); Franklin v. State, 298 Ga. 636, 639-640 (2) (784 SE2d 359) (2016) (jailed co-conspirator made incriminating statement regarding others' participation in and motive for murder).

The new Evidence Code governing co-conspirator admissions is by no means identical to Fed. R. Evid. 801 (d) (2) (E), although it includes language from that rule. It departs from the text of the federal rule in several respects, notably by explicitly incorporating the rule, established by our case law decided under the former Georgia Evidence Code, that statements "made during the concealment phase of a conspiracy" are included as part of the co-conspirator exception. OCGA § 24-8-801 (d) (2) (E); see Marchman, supra, 299 Ga. at 545 (9); Hassel, supra, 294 Ga. at 839 (3). And the General Assembly, by expressly

5

incorporating the language of our prior decisions, evinced its intent to adopt the principle that a conspiracy does not necessarily terminate upon the achievement of its object. See Varner v. Sharp, 219 Ga. App. 125, 126 (464 SE2d 388) (1995) (holding in Prince v. Black, 256 Ga. 79 (344 SE2d 411) (1986), subsequently incorporated as former OCGA § 53-4-4 (c) (1) (E)).

However, we interpret differently those portions of the new Code section that track the language of the Federal Rules of Evidence. "[T]o the extent the new Georgia evidence rules borrow from the text of the federal evidence rules in this way, we look for guidance to the decisions of federal appellate courts, particularly the Eleventh Circuit, interpreting the federal rules. [Cits.]" Hood v. State, 299 Ga. 95, 99 (2) (786 SE2d 648) (2016). See also Ga. L. 2011, p. 99, § 1 ("It is the intent of the General Assembly in enacting this Act to adopt the Federal Rules of Evidence, as interpreted by the Supreme Court of the United States and the United States circuit courts of appeal as of January 1, 2013, to the extent that such interpretation is consistent with the Constitution of Georgia.") Language borrowed from Rule 801 (d) (2) (E) that did not appear in the former Georgia Evidence Code requires that, to fall within the hearsay exception, the statements themselves be made "in furtherance of the conspiracy" whether made

before the object of the conspiracy is achieved or during the concealment phase. Pretermitting whether the statements were made during the concealment phase of the conspiracy, the dispositive question here is whether the statements were made "in furtherance of the conspiracy."

> In interpreting Fed. R. Evid. 801 (d) (2) (E), the Eleventh Circuit applies
>
> a liberal standard in determining whether a statement is made in furtherance of a conspiracy. The statement need not be necessary to the conspiracy, but must only further the interests of the conspiracy in some way. Statements made to solicit membership or participation in the conspiracy and statements explaining the conspiracy to a new member are made in furtherance of the conspiracy.

(Citations and punctuation omitted.) United States v. Miles, 290 F3d 1341, 1351 (II) (C) (1) (11th Cir. 2002).

However, this liberal standard is not without limits. A "retrospective statement" regarding matters that have already occurred, and that is not intended to foster involvement in the conspiracy, is not a statement in furtherance of the conspiracy. United States v. Phillips, 664 F2d 971, 1026 (IX) (B) (former 5th Cir. 1981), overruled on other grounds, United States v. Huntress, 956 F2d 1309 (5th Cir. 1992). And a statement that merely "spilled the beans" to a third party "could hardly be considered to have advanced any object of the conspiracy.

[Cit.]" United States v. Posner, 764 F2d 1535, 1538 (11ᵗʰ Cir. 1985). Similarly, a statement which was not made "to conceal the conspiracy and served only to disclose the scheme," or which "merely inform[ed] the listener of the declarant's activities," is not admissible under Fed. R. Evid. 801 (d) (2) (E). (Citations omitted.) City of Tuscaloosa v. Harcros Chemicals, 158 F3d 548, 559 (II) (A) (1) (11ᵗʰ Cir. 1998). Moreover,

> [s]tatements which simply implicate one coconspirator in an attempt to shift the blame from another . . . cannot be characterized as having been made to advance any objective of the conspiracy. On the contrary, statements that implicate a coconspirator, like statements that "spill the beans" concerning the conspiracy, are not admissible under Rule 801 (d) (2) (E).

(Citation omitted.) United States v. Blakey, 960 F2d 996, 998 (11ᵗʰ Cir. 1992).

On appeal, we review the trial court's grant of a motion in limine for abuse of discretion. Wright v. State, 300 Ga. 185, 188 (3) (794 SE2d 105) (2016). But the trial court's "determination that a statement was made in furtherance of a conspiracy is a finding of fact subject to a clearly erroneous standard of review. [Cit.]" Miles, supra, 290 F3d at 1351 (II) (C) (1); see also Reed v. State, 291 Ga. 10, 13 (3) (727 SE2d 112) (2012) (similar transaction evidence; holding that "in various [evidentiary] contexts, we accept factual

8

findings unless they are clearly erroneous and review a trial court's ultimate decision on the particular issue for abuse of discretion. [Cits.]").

As it did at the hearing on the motion in limine and in its pleadings below, the State to some extent conflates the issue of whether a statement was made in furtherance of the conspiracy with the issue of whether it was made during the concealment stage of the conspiracy. As the trial court correctly noted, most of the decisions cited by the State predate the enactment of the new Evidence Code, and therefore address whether the statements were made during the "concealment phase" of the conspiracy under former OCGA § 24-3-5, not whether they were "in furtherance of the conspiracy" under OCGA § 24-8-801 (d) (2) (E), a requirement which did not exist at the time. With respect to whether statements were made in furtherance of the conspiracy, the State makes the following contentions:

With respect to the first witness, Jones' co-worker to whom he displayed a pistol, the State suggests that Jones "was likely attempting to gain [the witness'] trust and confidence." But the record does not demand this conclusion. The witness testified that he did not want to hear about it, although Jones told him, "You cool." But his concern was not that he was being enlisted into the

9

crime, as the State contends, but that he might be called to testify in court. The State further argues that Jones "was possibl[y] threatening [the witness] into silence." But the only threat testified to by this witness was made by Wilkins himself in a separate incident the following year, after the witness went to the police with his story. The trial court's conclusion that the statement was merely retrospective was not clearly erroneous, and the court did not abuse its discretion in so holding.

The State argues with respect to Jones' statements to his estranged wife that Jones was "furthering his concealment" by hiding in a place he was not likely to be. But even if Jones was attempting to avoid apprehension, the trial court could reasonably conclude that the incriminating statement that he made to his estranged wife did not further the concealment in any way, but "served only to disclose the scheme," and "inform[ed] the listener of the declarant's activities." (Citation and punctuation omitted.) City of Tuscaloosa, supra, 158 F3d at 559 (II) (A) (1). Similarly, the fact that Jones showed a firearm to an acquaintance while he and Wilkins were at his home, and attempted to conceal it there, may have indicated an attempt to hide the murder weapon and thus avoid detection, but the trial court's conclusion that the revealing of this fact to

10

the witness and Jones' incriminating statement did not further the conspiracy was not clearly erroneous. The trial court did not abuse its discretion in excluding these statements.

The State also contends that statements Jones allegedly made to Burgess' stepsister furthered the conspiracy, because the witness testified that "she was being used for the purpose of hiding" and thus the statements were made to encourage her to do so. But her proposed testimony — as described by the State in its brief — was rather that she believed that her stepsister and Jones wanted to get to know her better, but that she discovered that "they used [her] for something totally different." Moreover, this witness told the police that Jones revealed the murders while he was drinking, and that when she "learned of the murder, she put them out of her house." This evidence supports the trial court's conclusion that Jones' statement was not in furtherance of the conspiracy, and it did not abuse its discretion in so holding.

Finally, the State asserts that Jones' statements to co-conspirator Burgess that he "got another body," were "made in an effort to keep her in the conspiracy and on co-conspirator Jones's side." But, as the trial court observed, Jones' urging Burgess to put the blame on Wilkins and a fictitious individual was

11

merely a statement implicating a co-conspirator, not in furtherance of the conspiracy, and therefore not admissible. <u>Blakey</u>, supra, 960 F2d at 998-999. The State has suggested no possible motivation to further the conspiracy in the remaining statements presented.

In sum, from the evidence presented to the trial court, we conclude that the trial court's determination that certain of the statements by Jones were not made "in furtherance of the conspiracy" was supported by the evidence and was not clearly erroneous. It follows that the trial court did not abuse its discretion in partially granting Wilkins' motion in limine.

<u>Judgment affirmed. All the Justices concur.</u>

Decided October 2, 2017.

Murder. Chatham Superior Court. Before Judge Freesemann.

<u>Meg Heap, District Attorney, Jerome M. Rothschild, Jr., Lyndsey H. Rudder, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General</u>, for appellant.

<u>Robert W. Attridge, Jr., Robert L. Persse</u>, for appellee.