**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 12, 2019**

# In the Court of Appeals of Georgia

A19A1127. GAY v. THE STATE.

MILLER, Presiding Judge.

Following a jury trial, Tyre Gay was convicted of three counts of armed robbery, three counts of possession of a firearm during commission of a felony, one count of hijacking a motor vehicle, one count of kidnapping, and one count of aggravated assault. Gay was sentenced to life imprisonment, with an additional 5-year prison sentence. Gay appeals from the denial of his motion for new trial, arguing that (1) the evidence was insufficient to support his convictions for the offenses regarding two of the victims in this case; (2) his trial counsel rendered ineffective assistance; and (3) the trial court committed plain error by failing to charge the jury on accomplice testimony. For the reasons that follow, we affirm the trial court's order denying Gay's motion for new trial.

Viewed in the light most favorable to the verdicts,[1] the evidence shows that on June 30, 2011, James Thomas, a taxicab driver, went to the Civic Center MARTA station in Atlanta to pick up two passengers. After arriving at the train station, Thomas used a phone number provided by his dispatch company to call the passengers and inform them that he was waiting to take them to their destination. After getting into Thomas' vehicle, the two passengers instructed Thomas to drive to the Bouldercrest apartment complex in East Atlanta. When they reached the destination, Thomas turned to inform the passengers of the cost of the fare but the passenger seated behind Thomas began to choke him and demanded at gunpoint that he "give up money." The passenger took money and a cellular phone from Thomas and ordered him into the back seat of the vehicle. Thomas began to struggle for the firearm with the gunman while the second passenger in the vehicle encouraged the first passenger to shoot Thomas. During the struggle, Thomas escaped from his vehicle and fled the scene. Thomas described the first suspect to law enforcement as a black male between the ages of 20 and 25, who was approximately five feet ten inches tall, weighed 160 pounds, who had dark skin and short hair, and was wearing a grey t-shirt and jeans. He described the second suspect as a black male between the

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2

ages of 20 and 25, who was approximately five feet ten inches tall, weighed 170 pounds, had dark skin and a low haircut, and was wearing a white t-shirt and tan shorts. Thomas described the firearm as a silver-plated handgun. From a photo line-up, Thomas identified Ladarrius Robinson, the co-defendant, as one of the men involved in the robbery.

The next day, Taha Aitsalah, another taxicab driver, picked up three male passengers from downtown Atlanta. Aitsalah's car was equipped with a camera, which took photographs of the three male passengers. After arriving at an apartment complex in Decatur, the passenger seated behind Aitsalah grabbed Aitsalah by the head and removed him from the vehicle at gunpoint. One of the passengers broke the camera in the vehicle and took $40 from Aitsalah's pocket. Aitsalah was placed in the back of the vehicle while one of the passengers drove to a nearby ATM machine, asked Aitsalah for his PIN, and made two withdrawals of $500 each from Aitsalah's account. The passengers then drove to another apartment complex, let Aitsalah out of the vehicle, and drove away in Aitsalah's car. Aitsalah identified Gay from a photo line-up and during trial as the person who robbed him and threatened him with the firearm.

The day after Aitsalah's robbery, Stephen Obidoh, another taxicab driver, received a call from his taxicab company to pick up two male passengers from a lounge in downtown Atlanta. The passengers instructed Obidoh to take them to the Bouldercrest apartment complex, and upon their arrival, they paid Obidoh $40. While exiting the taxicab, one of the passengers told the other passenger to "do it," at which point the other passenger pointed a pistol at Obidoh's head. Obidoh grabbed the pistol, and a struggle ensued. During the struggle over the pistol, Obidoh was hit on the head with the pistol. Obidoh subsequently fled the vehicle and called the police. During the incident, the passengers took back the $40 paid to Obidoh and also took an additional $125 from Obidoh's pocket. Obidoh described the perpetrators as dark-skinned black males, who were approximately five feet eight inches tall, weighing between 150 and 160 pounds, with low haircuts, and were between the ages of 19 and 22. Obidoh did not identify any of the perpetrators from photo line-ups shown to him by law enforcement. Obidoh did, however, provide law enforcement with the telephone number that the perpetrators used to call for the taxi service. The phone number provided by Obidoh was the same phone number that was used to call Thomas.

The lead detective assigned to investigate the three robberies subpoenaed the telephone records for the number that was used to request taxi service from Thomas and Obidoh. The records showed that the phone number was registered to a business, Diva Inspired, LLC, which was owned by Gay's mother. The call Thomas received for taxi service originated from the city of Atlanta, and the phone was also in the Bouldercrest area around the time of Obidoh's robbery. A search of the cellular phone revealed a photograph of a silver-plated handgun. Gay's mother allowed Gay to use the phone that was registered to her business, and Gay had also let other people use the phone during the summer of 2011.

The lead detective interviewed Ladarrius Robinson in connection with the crimes, and Robinson provided him with a written and recorded statement. In Robinson's written statement, he stated that on June 26 or June 27, he was with Gay[2] and his cousin, Jermaine Cheek, and that he was aware that Cheek and Gay were going to rob taxi drivers. Robinson provided a detailed account of three different

---

[2] In his written statement, Robinson refers to Gay by Gay's nickname, "Pezzy."

5

robberies in which he, Cheek, and Gay robbed taxi drivers, and he stated that Gay was the only person that carried a firearm during the offenses.[3]

Gay was indicted for three counts of armed robbery (OCGA § 16-8-41) (counts nine, fifteen, and twenty-eight), three counts of possession of a firearm during the commission of a felony (OCGA § 16-11-106) (counts ten, eighteen, and thirty), one count of hijacking a motor vehicle (OCGA § 16-5-44.1) (count sixteen), one count of kidnapping (OCGA § 16-5-40) (count seventeen), and one count of aggravated assault (OCGA § 16-5-21) (count twenty-nine).[4] Gay was found guilty on all counts, and was sentenced to life imprisonment, with a consecutive 5-year prison sentence. Gay filed a motion for new trial, which the trial court denied. This appeal followed.

1. First, Gay argues that the evidence was insufficient to support his convictions for the two counts of armed robbery, two counts of possession of a firearm during the commission of a felony, and one count of aggravated assault, that pertain to the offenses involving Thomas and Obidoh. We disagree.

---

[3] Robinson was also indicted for the offenses in this case. He pled guilty to the robberies prior to Gay's trial and received a 12-year prison sentence.

[4] Gay was also indicted on numerous other offenses pertaining to different victims which were subsequently dismissed by the State.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.

(Citation omitted.) *Harvey v. State*, 344 Ga. App. 761, 763 (811 SE2d 479) (2018).

Here, as to the offenses at issue,

[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon.

OCGA § 16-8-41 (a). As to a charge of aggravated assault,

A person is chargeable with aggravated assault under OCGA § 16-5-21 (a) (2) when he commits the offense of simple assault with a deadly weapon. OCGA § 16-5-20 states: (a) a person commits the offense of simple assault when he either: (1) Attempts to commit a violent injury to the person of another; or (2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury.

7

(Citation and punctuation omitted.) *Harris v. State*, 273 Ga. App. 90 (614 SE2d 189) (2005). Moreover, a person is chargeable with possession of a firearm during the commission of a felony when that person "ha[d] on or within arm's reach of his or her person a firearm during the commission of, or the attempt to commit [a]ny crime against or involving the person of another[.]" OCGA § 16-11-106 (b) (1). We note that Gay was indicted individually and as a party in the commission of the crimes.

> A participant to a crime may be convicted although he is not the person who directly commits the crime. A person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires, counsels or procures another to commit the crime may be convicted of the crime as a party to the crime. Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during, and after the commission of a crime. Whether [Gay] was a party to the crimes and aided and abetted [Robinson] in the commission of [the offenses] is a jury question.

(Citations and punctuation omitted.) *Huntley v. State*, 331 Ga. App. 42, 43 (1) (769 SE2d 757) (2015).

We conclude that the record contains evidence from which a jury could find that Gay was, at the very least, a party to the crimes involving Thomas and Obidoh, and thus Gay's insufficient evidence claim fails. Here, Obidoh testified that after

8

dropping off two male passengers at the Bouldercrest apartment complex, one of the passengers pointed a gun at his head and took $125 from his pocket. Although Obidoh did not identify Gay in a photo line-up, the telephone number that the assailants used to call for taxi service was registered to a business that was owned by Gay's mother. Thomas testified that after dropping off the suspects at the Bouldercrest apartments, the passenger seated behind him began to choke him at gunpoint and took his money and cellular phone. Thomas identified Robinson as one of the assailants in the robbery. Robinson submitted a written statement to law enforcement, which was admitted into evidence, wherein Robinson said that Gay spoke with him regarding how Gay and Cheek "rob taxis." Robinson also stated that Gay was the only person that carried a firearm during the robberies. Thus, sufficient evidence exists within the record from which a jury could find that Gay was, at least, a party to the crimes involving Thomas and Obidoh.

To the extent that Gay argues that Robinson's initial statement to law enforcement implicating him in the offenses was not sufficiently corroborated, we are unpersuaded. "When the only witness is an accomplice, corroborating evidence is

required to support a guilty verdict." *Raines v. State*, 304 Ga. 582, 587 (2) (a) (820 SE2d 679) (2018); see also OCGA § 24-14-8.

> Although OCGA § 24-14-8 provides that corroboration is required to support a guilty verdict in felony cases where the only witness is an accomplice, only slight evidence of corroboration is required. The necessary corroboration may consist entirely of circumstantial evidence, and evidence of the defendant's conduct before and after the crime was committed may give rise to an inference that he participated in the crime. The evidence need not be sufficient in and of itself to warrant a conviction, so long as it is independent of the accomplice's testimony and directly connects the defendant to the crime or leads to the inference of guilt. The sufficiency of the corroboration is a matter for the jury to decide. And in considering sufficiency, we must consider all the evidence admitted by the trial court, regardless of whether that evidence was admitted erroneously.

(Citations and punctuation omitted.) Id. at 588 (2) (a). "Further, our law does not require corroboration of every particular of an accomplice's testimony or that the corroborating evidence match the testimony of the accomplice in every detail." *Daniels v. State*, 339 Ga. App. 837, 840 (795 SE2d 94) (2016).

Here, there was sufficient evidence to corroborate Robinson's initial statement to police that implicated Gay in the crimes against Thomas and Obidoh. In each of the robberies involving the three victims, the victims testified that they picked up two or

three black passengers who placed a call for taxi cab service. The same telephone number was used to call for taxi cab service for the crimes involving Thomas and Obidoh. Subscription records showed that the telephone number was registered to a business owned by Gay's mother, and Gay's mother testified that she allowed her son to use her business phone. In each case, the victims testified that after picking up the patrons and arriving at the destinations, they were each attacked, threatened with a firearm, and robbed of their money and other belongings. Aitsalah identified Gay as his assailant. Moreover, all three robberies in this case occurred over a three-day period and were committed in the same county. Also, law enforcement were able to "map" Gay's phone and determined that Gay's phone was present in the area during the crimes involving Thomas and Obidoh.

Accordingly, we conclude that the record contains sufficient evidence to corroborate Robinson's initial statements implicating Gay in the commission of the offenses. See *Cisneros v. State*, 299 Ga. 841, 845-846 (1) (b) (792 SE2d 326) (2016) (holding that there was sufficient evidence to sustain the defendant's convictions for four home invasion robberies where the accomplice's testimony was corroborated by the fact that all four home invasions were committed in the same manner); *Crawford v. State*, 294 Ga. 898, 901-902 (1) (757 SE2d 102) (2014) (holding that the phone

11

records which revealed the location of the phone during the commission of the offenses "provided only circumstantial evidence of Crawford's participation in the crimes," but was sufficient to corroborate the accomplice's testimony). Accordingly, the evidence was sufficient to support Gay's convictions for the offenses relating to Thomas and Obidoh.

2. Next, Gay argues that his trial counsel was ineffective for failing to impeach one of the victims during trial and for failing to obtain evidence that the lead detective had a history of racial discrimination. Both claims are without merit.

> To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. If an appellant fails to meet his or her burden of proving either prong of the *Strickland*[5] test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. Furthermore, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach

[5] *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial scrutiny of counsel's performance must be highly deferential.

(Citation omitted.) *Bearden v. State*, 316 Ga. App. 721, 725 (3) (728 SE2d 874) (2012).

(a) Gay argues that his trial counsel was ineffective for failing to impeach Aitsalah with testimony he gave in a Clayton County trial[6] in which Aitsalah failed to identify him as the assailant. We disagree.

It is true that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Douglas v. State*, 327 Ga. App. 792, 795 (2) (A) (761 SE2d 180) (2014).

But, in any case in which the ineffectiveness of counsel for inadequate investigation is claimed, the reasonableness of a particular decision not to investigate in the manner urged must be assessed in light of all the circumstances at that time, and such assessment must include a heavy measure of deference to counsel's judgments.

(Citation omitted.) *Barker v. Barrow*, 290 Ga. 711, 713 (1) (723 SE2d 905) (2012).

---

[6] As part of the Clayton County case, Gay was charged with armed robbery, aggravated assault with intent to rob, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a crime.

Here, the transcript from the Clayton County proceeding shows that Aitsalah was called as a similar transaction[7] witness for the State and testified about the crimes that occurred in the instant case. At the hearing for Gay's motion for new trial, trial counsel testified that he made numerous attempts to obtain the transcript of Aitsalah's testimony in time to use it as part of the instant trial, but counsel was unsuccessful due to insufficient funds. Counsel testified that he requested funds from the trial court to pay for the transcript, but the trial court did not disburse the funds. Counsel also spoke with Gay's mother about obtaining funds for the transcript, but she was unable to assist. Counsel also called the court reporter to obtain a copy of the transcript but was advised that he could not receive a free copy of the transcript. Counsel testified that he did not make a request under the Open Records Act, OCGA § 50-18-70 et seq., because of the fees associated with the request.

The record thus shows that trial counsel made numerous attempts to obtain a copy of the trial transcript through multiple channels but was ultimately unsuccessful due to a lack of funds. Consequently, because trial counsel made reasonable attempts

---

[7] OCGA § 24-4-404 (b) allows for the admission of other crimes, wrongs, or acts for "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

14

to obtain a copy of the trial transcript, trial counsel did not perform deficiently. See

*Hassel v. State*, 294 Ga. 834, 838-839 (2) (755 SE2d 134) (2014) (holding that trial

counsel was not deficient where the evidence showed that trial counsel made

reasonable attempts to investigate and obtain evidence).

Furthermore, Gay cannot show prejudice from trial counsel's failure to obtain

the transcript. Counsel testified that, after reviewing the trial transcript,[8] he

discovered that there were no questions posed to Aitsalah to identify Gay as the

perpetrator during the trial proceedings. Counsel's testimony is supported by the

transcript and shows that neither the State nor defense counsel asked Aitsalah to make

an in-court identification of Gay as the perpetrator. Thus, because Aitsalah was never

asked to identify Gay as the perpetrator during the Clayton County trial, Gay cannot

show prejudice because there was no inconsistent evidence presented that could have

been used to impeach Aitsalah or show that Aitsalah would not have been able to

identify Gay as the perpetrator if requested to do so. See *Moss v. State*, 298 Ga. 613,

618-619 (5) (d) (783 SE2d 652) (2016) (holding that the defendant could not show

prejudice from trial counsel's failure to present testimony from the defendant's

---

[8] Gay supplemented the Clayton County trial transcript in support of his motion for new trial below.

15

employer because the employer would not have provided helpful evidence for the defense). Accordingly, Gay's claim that his trial counsel was ineffective for failing to impeach Aitsalah fails.

(b) Gay further argues that his trial counsel was ineffective for failing to obtain the lead detective's personnel file which Gay alleges contained evidence that the lead detective had a history of racial prejudice. We are unpersuaded.

As previously stated, trial counsel testified that, as a routine practice, he requests "any internal affairs investigations and all employment files" during the discovery process. Counsel testified that he tried to obtain a copy of the lead detective's file from the district attorney and the district attorney's office but was unsuccessful because the district attorney and the district attorney's office did not have a copy of the file. Counsel testified that he did not request the detective's record under the open records act because he did not have the funds to pay for the file. Accordingly, as the record shows that trial counsel did investigate into the lead detective's background and made reasonable attempts to obtain the detective's personnel file, Gay cannot show that trial counsel was deficient by failing to obtain the lead detective's personnel file. See *Hassel*, supra, 294 Ga. at 838-839 (2).

16

Accordingly, the trial court properly denied Gay's ineffective assistance of counsel claims.

3. In his final enumeration of error, Gay argues that the trial court committed plain error by failing to instruct the jury on the requirement for accomplice corroboration. We disagree.

Gay concedes that his trial counsel did not object to the jury instructions during trial.

> Because trial counsel did not object to the jury instructions at trial, appellate review of the contentions is precluded unless the contested portion of the jury charge constitutes plain error which affects substantial rights of the parties. We review for plain error an alleged jury-instruction error if the error is properly enumerated and argued on appeal.

(Citation and punctuation omitted.) *Terry v. State*, 291 Ga. 508, 509 (2) (731 SE2d 669) (2012). To establish plain error,

> [f]irst, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of

17

the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation omitted.) *Lyman v. State*, 301 Ga. 312, 316-317 (2) (800 SE2d 333) (2017). "Reversal of a conviction is authorized if all four prongs . . . are met[.]" (Citation omitted.) *Terry*, supra, 291 Ga, at 509 (2). "On plain error review, the presence of actual legal error is not enough, as the jury instruction in question must have an obvious defect rather than a merely arguable defect." (Citation and punctuation omitted.) Id.

*a. Counts Fifteen, Sixteen, Seventeen, and Eighteen*

As to counts fifteen, sixteen, seventeen, and eighteen, which pertain to victim Aitsalah, Gay cannot show error in the trial court's failure to instruct the jury on the requirement for accomplice corroboration.

OCGA § 24-14-8 provides that

[t]he testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including prosecutions for treason, prosecutions for perjury, and felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient.

18

Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness, except in prosecutions for treason.

As recently explained by our Supreme Court,

The single-witness rule is the general rule and is a guiding principle of both the factfinder's role in evaluating the evidence presented at trial and the courts' role in determining whether the State has presented sufficient evidence to support the charges against a defendant. In most cases, the rule allows the jury to find the defendant guilty in the face of conflicting or inconsistent evidence or on the basis of the uncorroborated testimony of a single witness. This rule is longstanding, having been in statute in Georgia in some form at least as far back as 1871.

(Citations omitted.) *Vasquez v. State*, — Ga. —, — (2) (c) (830 SE2d 143) (June 24, 2019). The Court further explained that the rule requiring accomplice corroboration is not a general principle, but is instead an exception to the single witness rule where the evidence is based solely on an accomplice's testimony. Id.

As previously explained, Robinson implicated Gay in the commission of the offenses in his initial statement to law enforcement. During trial, however, Robinson testified that Gay was not involved in the crimes. Robinson said that he lied in his initial statement to law enforcement about Gay's involvement because he was upset

19

that Gay had been "talking" to his girlfriend. Nevertheless, the record shows that Aitsalah provided detailed testimony regarding the armed robbery, hijacking, and kidnapping offenses during trial, and specifically testified about his pre-trial identification of Gay as his assailant from a photo line-up and also identified Gay as the assailant during trial. The camera in Aitsalah's car also took pictures of the three individuals and the photographs were entered into evidence for the jury's consideration. In its charge to the jury, the trial court instructed the jury on the single-witness rule and said that

> [a]s with all issues of witness credibility, you, the jury, must apply your common sense and reason to decide what testimony you believe or do not believe. The testimony of a single witness, if believed, is sufficient to establish a fact. Generally, there is no legal requirement of corroboration of a witness provided you find the evidence to be sufficient.

Accordingly, Gay cannot show error in the trial court's single-witness instruction regarding the offenses pertaining to Aitsalah, because the evidence for those offenses was not based solely on Robinson's statement implicating Gay in the offenses. In light of victim Aitsalah's testimony detailing the commission of the

20

crimes and his testimony identifying Gay as the perpetrator, Gay cannot show error in the trial court's single-witness instruction to the jury as to counts fifteen, sixteen, seventeen, and eighteen. See *Vasquez*, supra, — Ga. at — (2) (c) (holding that the trial court did not err in charging the jury on the single witness rule because the State presented testimony from witnesses who were not accomplices of the defendant and therefore the accomplice corroboration instruction was not warranted).

*b. Counts Nine, Ten, Twenty-Eight, Twenty-Nine, and Thirty*

As to counts nine, ten, twenty-eight, twenty-nine, and thirty, which pertain to victims Thomas and Obidoh, we conclude that Gay intentionally relinquished his right to have the jury instructed on the accomplice corroboration requirement.

Under plain error analysis, "an objection is intentionally relinquished or abandoned if it is affirmatively waived." (Punctuation omitted.) *Vasquez*, supra, — Ga. at — (2) (c). "Generally, counsel's silence at a juncture when a request for — or objection to — a jury instruction might have been made will be considered merely a forfeiture for which plain-error review remains available." Id. However, "an appellate court can conclude that the defendant's right — or objection — to a particular instruction was intentionally relinquished if the appellate court can discern a tactical

21

reason on the part of the defense for failing to request (or object to, as the case may be) a specific jury instruction." Id.

The facts of this case are analogous to those in *Vasquez*. There, the trial court charged the jury on the single witness rule. Vasquez, supra, — Ga. at — (2) (c). On appeal, the defendant argued that the trial court committed plain error by failing to charge the jury on the requirement for accomplice corroboration. Id. As part of its analysis of Vasquez's plain error claim, the Court noted that trial counsel's defense at trial was that the accomplice was responsible for the offenses. Id. At the hearing on the motion for new trial, trial counsel was asked whether he considered a certain witness' testimony to be accomplice testimony. Id. Trial counsel responded, "[n]o our defense was she did it. She was responsible. And I didn't really want a jury hearing instructions that they were working together or that they were somehow in cahoots on this thing. Our defense was we were pointing fingers at [the accomplice], and that was it." (Emphasis omitted.) Id.

The Court determined that

[t]hrough this testimony, trial counsel clearly articulated on the record that his trial strategy was to place blame for [the victim]'s death solely on [the accomplice] and that this strategy was advanced by not having

the trial court suggest to the jury through its charge that [the accomplice] and Vasquez were, or could be considered, accomplices.

Id. The Court also noted that trial counsel presented his theory through opening and closing statements and through cross-examination of the State's witnesses. Therefore,

> the record reflect[ed] that trial counsel elected not to request a jury instruction regarding accomplice corroboration as part of a conscious defense strategy to place blame for [the victim]'s death on [the accomplice] and to avoid any suggestion by the trial court that [the accomplice] and Vasquez were accomplices. Thus, . . . Vasquez intentionally relinquished any request to an accomplice-corroboration instruction.

Id.

Here, at the motion for new trial, trial counsel was asked why he did not request instructions on conspiracy and a co-conspirator, and trial counsel answered:

> I didn't want to draw any undue attention to the charge because in my experience if the State can't prove that he was a direct actor, they always go with a party to a crime, and most juries are confused by the conspiracy. And so, I didn't want to draw any undue attention to that theory when, of course, our theory was Mr. Gay had nothing to do with the incidents and, in several cases, had an alibi that he was not present. Trial counsel also testified that he "pursued that line of questioning, getting an alibi, establishing an alibi, and making sure that [Gay] could

23

defend against the charges with an alibi and him not being present." Trial counsel further elaborated:

I didn't want to put undue focus on conspiracy. Because in my experience when a jury has a tough time believing the State has proven the individual committed the crime, they typically go with party to a crime or conspiracy, and it's an easy way to get a conviction, so I didn't want to draw any undue focus on that. Trial counsel explained that a conspiracy instruction would have been "counterproductive" to Gay's defense "because all it would mean is somebody believed, well, he might not have been the person who directed it. But, given his activity before and after, he had something to do with it and they generally convict." The record also shows that trial counsel pursued his theory of defense during his questioning of the State's witnesses, and vehemently argued during opening and closing arguments that Gay had nothing to do with the crimes and that Robinson was the perpetrator of the offenses.

Thus, we conclude that *Vasquez* is virtually indistinguishable from the instant case. As in *Vasquez*, trial counsel's strategy was to place the liability for the crimes on other perpetrators and his theory was that Gay was not present during the commission of the crimes. Like *Vasquez*, Gay's theory would have been advanced by not having the trial court suggest to the jury through its charge that Gay and Robinson were accomplices. The record reflects a conscious defense strategy to place blame on

24

Robinson for the commission of the crimes and to avoid any suggestion by the trial court that Gay and Robinson were accomplices. Therefore, we conclude that Gay intentionally relinquished any request for an accomplice corroboration instruction, and therefore his plain error claim fails.

Accordingly, we affirm the trial court's order denying Gay's motion for new trial.

*Judgment affirmed. Rickman and Reese, JJ., concur*.